GREENE, Appellant, vs. CURTIS AUTOMOBILE COMPANY, Respondent.

*December 9, 1910—January 10, 1911.*

*Sales: Automobiles: Warranty: Breach: Rescission: Waiver.*

1. Representations by the seller of a second-hand automobile that it was in a good state of repair and efficiency and would develop eighteen horse power and operate all right, made to a buyer who was unfamiliar with the mechanism of automobiles and so informed the seller, were relied upon by the buyer and were understood by both parties as conditions upon which the car was purchased. *Held,* that they became a part of the contract of sale, and failure of the car to conform thereto warranted a rescission by the buyer.

2. The buyer's right to rescind the sale in such case was not waived by his accepting from the seller a written memorandum stating in detail the repairs which the seller proposed to make and adding, "if the above repairs do not make car right will dispose of the same," where it appears that the giving of such writing was but a step in a continued attempt of the seller to put the car in proper condition and that, notwithstanding such repairs, the car still failed to conform to the contract.

3. After rescission by the buyer, no act of the seller in rebuilding the car or any of its parts to make it conform to the conditions of the sale would bind the buyer.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

On July 30, 1906, *Alvin H. Greene,* on behalf of his wife, *Bertha Greene,* agreed to purchase from the defendant company a second-hand Autocar for $900. Seven hundred dollars was paid in cash when the car was turned over to *Mr. Greene.* There is a controversy as to the terms upon which a second-hand car belonging to the plaintiff was received by the defendant, but for the purposes of this appeal the finding of the trial court that the car was taken at a valuation of $200 for the balance of the purchase price of the Autocar is not questioned. *Mr. Greene* was told by the representative of the defendant company that the Autocar would develop eighteen horse power and that it was in good condition. *Mr. Greene,* in reliance upon the representations of the defendant's representative, closed the deal for the purchase of the Autocar. He was unfamiliar with the mechanism and construction of automobiles and went with the representative of the defendant a number of times out in the Autocar to learn how to run it. The car did not operate satisfactorily on these trips or on several trips which *Mr. Greene* attempted to make during the first half of the month of August and also during some trips which were attempted during the latter part of the month by Mr. Ure, a driver for *Mr. Greene.* After each of the unsuccessful attempts to operate the car it was taken to the garage of the defendant company and the representative promised each time to put the machine in a satisfactory condition. *Mr. Greene* was absent from Milwaukee for a while, but returned in the last days of the month of August and attempted to use the car. It would not operate satisfactorily. It would run only on low gear, despite the assurance of the representative of the company that the car was all right, which was made when the car was about to be taken out; and *Mr. Greene* tendered the car back to the company and demanded a return of the purchase price.

On September 1, 1906, the representative of the defendant gave Mr. Greene a written statement of what he would do to make the car satisfactory.    This statement is as follows:

"*Mr. A. H. Greene:*                    Milwaukee, 9–1, 1906.
"We agree to make the following repairs to Autocar, guaranteeing to increase the horse power to about 18, namely:
"Put in 12 new piston rings.
"Put on new commutator.
"Repair storage battery.
"Take up lost motion in valve stems with case-hardened nuts.
"Grind valves.
"Revise entire ignition system.
"Put in new sliding gear for transmission to be paid for by *Mr. Greene.*
"If the above repairs do not make car right, will dispose of same.                              CURTIS AUTO CO.
                                              "Per A. J. March."

A few days later when *Mr. Greene* wished to try the car he was assured, "The car is all right, it will give good satisfaction."    The car proved unsatisfactory upon this trial.    It was taken back to the garage and the representative of the defendant agreed to go over it again and put it in shape and to telephone *Mr. Greene* when it was ready.    A few days later, when *Mr. Greene* received a telephone that the car was all right, he and *Mrs. Greene* went to the garage to try it.    In going from the garage to the street a bolt dropped from the car, a tooth on the gear wheel was broken, and *Mr.* and *Mrs. Greene* left the car, stating that they would not take the car and demanding the return of the purchase price.    Two days thereafter *Mr. Greene* wrote the following letter to the defendant:

                    "Milwaukee, Wis., Sept. 17, 1906.
"*Curtis Automobile Company,*
    "Milwaukee, Wis.
    "DEAR SIRS: On July 30th you sold my wife, through me, a four cylinder automobile known as the 'Autocar.'    Being ignorant of the construction of automobiles, we took your

word for the condition of the car, and as you are well aware and as you have admitted, the car has not given satisfaction and was not in the condition in which you represented it to be.

"Rather than have any trouble in this matter we preferred to give you all the time possible in order to make a satisfactory running machine, and on the 1st of September went over the matter with you in detail, and you figured that certain repairs would place the machine in a satisfactory condition. After spending approximately two weeks at this work, it is not necessary for me to call your attention to the fact that the machine is as far from being satisfactory as it has been since the writer's acquaintance with it, and we do not feel at this time that we can lend any further indulgence in the matter and therefore request that you send us a check payable to *Mrs. A. H. Greene* for $900 in full settlement of this transaction.

"We expect to hear from you, together with a remittance for the above specified amount, by return mail.

"Yours truly,    A. H. GREENE."

During the latter part of September the car was put in satisfactory condition by the defendant company. No notice was given *Mr. Greene* of this fact.

Shortly after action was commenced by *Mrs. Greene* to recover the purchase price of the car, action was begun by the defendant company to recover for the repairs made on the car and for storage charges. The two actions were consolidated.

The trial court found that the agreement of September 1, 1906, was an acceptance of the car and a waiver of the fraudulent breach of the contract of sale that the car was a good one, that it would develop eighteen horse power, that the parts were in a perfect operating condition and would run all right, when in fact the car was not a good one, its parts were out of repair and defective so that it would not develop eighteen horse power as represented; nor would it run all right.

This is an appeal from the judgment of the trial court dismissing the complaint of *Mrs. Greene* and awarding judg-

ment to the automobile company for the repairs and for storage charges.

For the appellant there was a brief by *Burke, Alexander & Burke,* and oral argument by *W. E. Burke.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *W. F. Adams.*

SIEBECKER, J.   The court found that *Mr. Greene* acted for the plaintiff *Mrs. Greene* in all of the transactions involved in the purchase of the automobile from the defendant company.   Plaintiff contends that her agent had no authority to deal with the defendant's officers as he did in negotiating with them for repairs on the automobile, as specified in the written memorandum of September 1, 1906.   The evidence in the case justifies the inference that he acted within the scope of his authority on this occasion and that his acts pertaining to such arrangements were authorized by and within the scope of his employment by the plaintiff.

The question then arises, Did the referee and court err, as claimed by the plaintiff, in holding that the acceptance by *Mr. Greene* of the defendant's offer to make the repairs on the automobile upon the terms expressed in the writing of September 1, 1906, constituted a waiver of any default by the company in furnishing an automobile that was not in as good a condition of repair and as capable of developing horse power as agreed in their contract of sale?   The court approved the findings of the referee, which were to the effect that the defendant represented to the agent of the plaintiff and stipulated that this car was in a good state of repair and efficiency and would develop eighteen horse power and that it would operate all right so as to be fit for the ordinary uses and purposes of an automobile.   These findings are challenged by the respondent.   The evidence satisfactorily shows that the representations were made and were understood by the parties as conditions upon which the car was purchased by the plaintiff.

It appears that the agent, *Mr. Greene*, was unfamiliar with the mechanism of a machine and so informed the defendant's representative with whom he negotiated for its purchase, and that he relied upon such representations respecting the condition, power, and fitness of the car. Under these circumstances such representations do not constitute mere expressions of opinions concerning the car and its uses, but were representations of facts pertaining to its character, condition, and usefulness, on which the plaintiff's agent had a right to rely as a condition in making the purchase. They therefore became integral parts of the contract of sale. There is no serious dispute in the evidence but that the machine was defective in its mechanical parts and their operation and that it failed to develop the horse power called for by the contract of sale. The evidence is clear that the defendant's representative so considered it. This is clearly shown by the repeated attempts to repair the defects and by the attempts of the representatives to put it in such condition as to make it conform to the representations made by them. The finding that the car did not comply with the representations made to *Mr. Greene* is abundantly established by the evidence and furnished a good and sufficient basis for plaintiff to rescind the agreement.

The main question therefore is, Did the trial court err in holding that the transaction between the parties, culminating in the writing of September 1, 1906, amounted to an agreement by which the plaintiff's agent waived the fraudulent representation as to its repair and the condition of the machine and the consequent breaches of the contract of sale, and that the plaintiff was thus deprived of the right to rescind the contract, as she claims to have done the last time she and *Mr. Greene* attempted to use the car, and by the letter of September 17, 1906. It is undisputed that *Mr. Greene* had knowledge of the defects in the machine prior to September 1st, when he and the defendant's agent arranged for the

repairs specified in the writing of this date. The trial court considered that in view of the circumstances under which this arrangement was made it showed an intention to waive the right to rescind the sale for breach of the conditions of the agreement of purchase and to accept the machine.

In the light of the accompanying circumstances we are persuaded that the court erred in this regard. The foregoing statement of the evidence, as embodied in the referee's findings, clearly tends to show that the agent, *Mr. Greene,* persistently declared to the defendant's representatives that the machine must be put in as good a condition as called for by the contract of purchase and that he insisted on the right to return the machine unless it should be put in such condition. Defendant's representatives on the various occasions up to September 1, 1906, when the complaints concerning the defects in the car were brought to their attention, promised to repair it and remedy the defects complained of. In the negotiations leading up to the memorandum of September 1, 1906, they were explicitly notified that the plaintiff refused to accept the car in its imperfect condition, and the defendant thereupon offered by this writing to make the repairs specified therein. It does not appear that the parties in this writing agreed that the plaintiff was thereby accepting the car as of that time and that she was waiving defendant's defaults if it finally failed to make good the imperfect condition of the car, as required by the original contract of sale.

It is claimed that the provision, "If the above repairs do not make car right, will dispose of same," shows that if the specified repairs did not remedy the defects, then it was to be disposed of as plaintiff's property by the defendant for her. Wherein does this show that such disposition of the car was to be for the plaintiff? It is not so written, and to so interpret this provision violates its evident intent, for it significantly provides, "If such repairs do not make car right," then it is to be disposed of by the defendant. Obviously, such de-

fault referred to the original conditions of purchase, which defendant was attempting to "make right" by these repairs. Furthermore, all the surrounding facts and circumstances confirm the inference that the negotiation of September 1, 1906, was only one step in the course of dealing between the parties to put the car in condition to comply with the contract of sale. The transactions of which the writing of September 1st form a part clearly show such a purpose and negative the claim that the plaintiff thereby agreed to accept the machine and stipulated for these repairs in addition to the conditions of purchase.

The evidence is conclusive that the car did not fulfil the conditions of the contract of sale when first delivered, and that at no time was it put in proper condition up to the time of the last trial in September when plaintiff and her agent declared the contract rescinded and demanded repayment of the purchase money. It is shown that the plaintiff had given the defendant ample opportunity to repair the defects and put the car in proper condition to comply with the contract of sale, that it failed to do so, and that she was entitled to rescind the sale at the time she last tried the car in September and when the letter of September 17, 1906, was sent to the defendant. After such rescission no act of the defendant in rebuilding the car or any of its parts to make it conform to the conditions of the sale could be effective to bind the plaintiff. The plaintiff was entitled to judgment for recovery of the purchase money.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to award the plaintiff judgment for the purchase price paid for the automobile, with interest.