LORENZ, Respondent, vs. HART-PARR COMPANY, Appellant.

*April 11—May 2, 1911.*

*Sales: Breach of warranty: Notice: Sufficiency: Agency: Rescission:*

1. A letter to the vendor from the purchaser of a gasoline engine warranted to develop certain power, stating that he would need expert help in learning how to start the engine and get "the full power" out of it, and that he had had lots of trouble starting the engine with the belt on, is *held* to refer to the guaranteed power of the engine, and to be a compliance with the requirement of the contract of sale that notice be given "stating particularly wherein it fails to fulfil the warranty," especially where the vendor acted on such notice and treated it as sufficient.

2. In view of a letter from the vendor, written after receipt of the notice above mentioned, stating that vendor's traveling agent for Wisconsin, who had negotiated the sale, would inspect the engine, and a subsequent letter referring to the fact that such agent had helped to put the engine in running order, and in view of such agent's direction that if there was further trouble the vendee should notify him, not the vendor, the vendee had a right to assume that such agent was the proper person upon whom to call for further assistance, and the subsequent act of such agent, when so called upon, in sending an expert to put the engine in good order, was the act of the vendor and a recognition of the sufficiency of the notice already given and a waiver of any more specific notice.

3. Under all the circumstances in this case leading to the retention of an engine for a longer time than that specified in the contract of sale, during which time efforts were being made by the vendor to put the engine in running order, it is *held* that the purchaser did not thereby waive his right to rescind the sale for breach of the warranty.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This is an action brought by the plaintiff to recover the amount paid for a gasoline traction engine purchased from

the defendant under a written contract containing the following warranty:

"It is warranted that it is well made and of good materials and workmanship.

"That if properly operated it will develop the nominal rated capacity of power continuously and easily.

"That it will successfully operate a threshing outfit of a size and capacity usually operated successfully by an ordinary steam traction engine, the actual brake horse power rating of which is the same.

"That for road purposes it will as successfully draw the threshing outfit used with this engine as an ordinary steam traction engine of like actual brake horse power rating will handle its load.

"That the oil-cooling device will keep the cylinders sufficiently cool for the successful operation of the engine under all conditions of weather."

The complaint alleged that said engine did not comply with the terms of the warranty, in that it failed to develop the necessary horse power to successfully operate plaintiff's separator; that it was impossible to operate said engine so as to develop the nominal rated capacity of seventeen horse power; and that the oil-cooling device did not keep the engine sufficiently cool for successful operation. The complaint further alleged that after due notice by the plaintiff of said defective condition of the engine and opportunity on the part of the defendant to correct the same, said defendant was unable to remedy such defects, and thereupon plaintiff tendered the engine to the defendant and demanded the return of the purchase price thereof. The answer put in issue all the material allegations of the complaint. The jury returned the following special verdict:

"(1) When properly operated, was the gasoline engine which plaintiff bought of defendant capable of developing the nominal rated capacity of seventeen horse power, continuously and easily? *A.* No.

"(2) When properly operated, was said gasoline engine

capable of successfully operating a threshing outfit of a size and capacity usually operated successfully by an ordinary steam traction engine of the same actual brake horse power rating?   A. No.

"(3) When properly operated, was the oil-cooling device on said gasoline engine capable of keeping the cylinders sufficiently cool for the successful operation of the engine under all conditions of weather?   A. No.

"(4) Within six days from the day when plaintiff first used said gasoline engine, did he give notice to defendant by letter, stating as particularly as he was then able to state wherein the engine failed to fill the warranty thereof? A. Yes.

"(5) Did plaintiff give a reasonable time to defendant to send a competent person to remedy any defects, if such there were, in the engine?   A. Yes.

"(6) Did defendant's agent, R. P. Howard, and its expert, Albert Mader, and its representative, C. H. Parr, all fail in their efforts to make the engine fulfil the terms of the written warranty thereof?   A. As to Howard, we answer yes.   As to Mader, we answer yes.   As to Parr, we answer yes.

"(7) Did plaintiff purchase the gasoline engine in reliance upon the truth of the written warranty thereof? A. Yes."

On such verdict judgment was entered in favor of the plaintiff, from which judgment defendant appeals.

*Francis Williams,* for the appellant.

*Simon Gillen,* for the respondent.

BARNES, J.   The appellant insists that the evidence does not support the first, second, third, and fourth findings of the jury, and that the court should have changed the answers of the jury in each instance, and that if the court did not see fit to do so it should have granted a new trial.   We think there was ample evidence in the record to sustain the answers of the jury to the first, second, and third questions of the verdict.   In fact the preponderance of the evidence supports these findings.   Whatever difficulty the case presents arises

out of the contention that the answer to the fourth question has no support in the evidence.

The contract of sale contained the following provision:

"If inside of six days from the day of its [the engine's] first use it shall fail in any respect to fill this warranty, no-tice shall be given the *Hart-Parr Company* at their office at Charles City, Iowa, by registered letter or telegram, stating particularly wherein it fails to fill the warranty. . . . The use of said engine after the expiration of the time named in the above warranty shall be evidence of the fulfilment of the warranty, and full satisfaction to the undersigned, who agrees thereafter to make no further claim on the *Hart-Parr Company.* . . . Neither shall the fact of any local or traveling agent or expert of the company rendering assistance of any nature after the above warranty has been concluded, operate as an extension of the conditions thereof."

The plaintiff did not have a copy or duplicate of this war-ranty until about September 1st. He used the machine in threshing some peas at his own farm on August 16th or 17th, and on August 19th he started to thresh at the farm of a neighbor and concluded his work there on the evening of the 20th. This apparently was the only work plaintiff was able to do until after the expiration of six days from the date on which the engine was first started. Manifestly, the actual time available to make a test of the engine was rather short. On August 22d the plaintiff wrote the defendant and in his letter said:

"I will need some expert help in learning to start the en-gine *and get the full power out of it.* I and Mr. H. Hine had lots of trouble in starting the engine when we stopped with the belt on. I want to start Thursday morning, want your man here by that time."

This letter is indefinite, but it does inform the defendant that the services of an expert would be required to enable the plaintiff to get full power out of the engine. Full power would obviously be understood to mean the amount or quan-tity of power guaranteed by the contract of sale. By the

warranty the plaintiff was required to "state particularly" wherein the engine failed to comply with the warranty. The letter or notice was not as exact and precise as it would have been had a lawyer been employed to draw it. However, the plaintiff was not at this time preparing for a lawsuit, but was desirous of having the engine fixed up so that he could start it easily and get the guaranteed amount of power out of it. The defendant did not decline to act upon this letter because of the informal character of the complaint made. On August 23d it wrote the plaintiff: "We have just received word from our Mr. Howard that he would be there the middle of this week. We presume he is there and has gotten you straightened out by this time." Howard was the traveling salesman of the defendant in Wisconsin and the person who negotiated the sale of the engine to the plaintiff. Howard, as a matter of fact, visited the plaintiff on August 22d, after plaintiff's letter to the defendant had been sent to the postoffice for mailing, and did something in the way of putting the engine in running order. At this time Howard advised the plaintiff that if he had any further trouble with the engine he should notify him and not the defendant. On August 26th the defendant wrote the plaintiff: "We have heard from our Mr. Howard that he happened along about the time you wished a man and has helped you, giving such aid as you needed." About August 27th the plaintiff telegraphed Howard to send an expert to ascertain how the trouble with the engine could be remedied. An expert was sent who remained with the engine for three days, but apparently failed to make it work satisfactorily, whereupon plaintiff returned the engine to Waldo and wrote the defendant what he had done and specified in detail wherein the engine failed to fulfil the warranty and demanded back his notes given in payment of the same. From this point on the correspondence is quite voluminous but not very material. The defendant, under date of September 2d, notified the plaintiff that the engine was his be-

cause of his failure to give the notice required by the contract of sale within the prescribed time, and refused to recognize any right of rescission on the part of the plaintiff. The plaintiff took a contrary position. About September 14th Howard and one Parr, the secretary of the defendant company and an expert machinist, went to see plaintiff. They insisted that the engine was plaintiff's property, but that they desired to help him out by putting it in running order. The plaintiff, while maintaining that the engine was not his, consented to give it another trial and hauled it from Waldo to the place where he was threshing with his old engine. Howard and Parr did not succeed in making the engine work satisfactorily or in such a manner as to constitute a compliance with the contract. On October 7th the plaintiff again wrote the defendant that he would give it another chance to make the engine work according to warranty, and requested defendant to send another expert. The defendant declined to take advantage of such offer. The engine was again returned to Waldo before October 20th, and the defendant was notified of such return.

This does not appear to be a case where the plaintiff got sorry for having made the purchase and was looking for some subterfuge whereby he could avoid the contract. On the contrary, he seemed to be entirely willing to give the engine a fair trial, and to keep and use it if it could be made to do the work as guaranteed. Within the six-day period the defendant was notified that the services of an expert would be required to get the full power, which we think means the guaranteed power, out of the engine. The letter, in effect, stated that the engine was not furnishing the required power and also that it was very difficult to start it with the belt on. The defendant acted on this notice and treated it as sufficient by writing the letters of August 23d and 26th. It is true, Howard's first visit was not made at the instigation of the defendant after it had received the letter of August 22d. But

by writing that Howard was going to inspect the engine and
also that he had done so, these two letters clearly evince an
intention on the part of the defendant to treat the notice as
sufficient.   In view of the letters of August 23d and 26th and
of the statement made by Howard to the plaintiff, we think
he had a right to assume that Howard was the proper party
on whom to call for assistance, and that the act of Howard
in sending an expert on August 28th to put the engine in
good order was in fact the act of the defendant and a recogni-
tion of the sufficiency of the notice already given and a waiver
of any more specific notice than that given.   The decided
cases fully support the conclusion reached: *Kingman & Co.
v. Watson,* 97 Wis. 596, 609, 73 N. W. 438; *Trapp v. New
Birdsall Co.* 109 Wis. 543, 556, 85 N. W. 478, and cases
cited; *Hein v. Mildebrandt,* 134 Wis. 582, 585, 115 N. W.
121; *Peterson v. Walter A. Wood M. & R. M. Co.* 97 Iowa,
148, 66 N. W. 96; *Nichols & S. Co. v. Wiedemann,* 72 Minn.
344, 346, 75 N. W. 208, 76 N. W. 41.   We fail to find any
sufficient evidence to warrant us in holding that the plaintiff
waived his right to rescind by retaining the engine in his pos-
session as long as he did, considering the circumstances that
led to the retention.

*By the Court.*—Judgment affirmed.