JONES and others, Appellants, vs. BRANDT and another, Respondents, and F. C. AUSTIN DRAINAGE EXCAVATOR COMPANY, imp., Appellant.

*February 10—March 8, 1921.*

*Bills and notes: Holder in due course: Proof as to date of negotiation: Presumption: Fraud: Parol evidence as to representations: Expressions of opinion: Reliance on representations: Sales: Acceptance of goods: Chattel mortgages: Penalty upon unlawful sale.*

1. In an action on notes given for the price of a dredge, brought by the assignees of the seller, in which the buyer proved that the purchase had been induced by fraudulent representations, the assignees, having procured the notes from the seller, whose title was defective under sec. 1676—25, Stats. 1915, had the burden of proving, under sec. 1676—29, that they acquired the notes in due course for value under sec. 1675—51; and in sustaining such burden they were required to prove that they acquired the notes before they became due under sec. 1676—15.

2. Sec. 1676—15, Stats. 1915, providing that unless an indorsement is dated after maturity every negotiation of an instrument is deemed *prima facie* to have been effected before maturity, does not relieve the holder of a note taken from a person whose title is defective from the burden of affirmatively establishing that the note was indorsed and delivered before it was due.

3. Testimony that the sale of the dredge was fraudulently induced by misrepresentations as to its capacity and equipment is admissible to prove fraud, notwithstanding a provision of the contract that it embodied the entire understanding between the parties and that the seller's liability should not be affected by any statement or representation not contained therein.

4. Representations that the dredge was of a kind and construction such as to properly do the work desired and that it was equipped with an engine of a particular kind and capacity, are actionable as against the contention that they were mere expressions of opinion.

5. Though mere promises are not a basis for fraud, and though ordinarily fraud cannot be predicated on mere expressions of opinion, expressions of opinion may, under some circumstances, be treated as statements of facts.

6. Acceptance of the dredge, induced by the assurance of the agent of the seller that the dredge would be made to work satisfactorily, did not constitute a waiver of defects.

7. Where the mortgagor consented to the sale of mortgaged property under a chattel mortgage, he could not recover a penalty under sec. 2316c, Stats. 1915, on the ground that the statute relating to chattel-mortgage sales had not been complied with, the taking not being hostile to him.

   ROSENBERRY and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Juneau county: JAMES O'NEILL, Circuit Judge. *Modified and affirmed.*

For the appellants there was a brief by *Goggins, Brazeau & Goggins* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondents there was a brief by *Grady & Farnsworth* of Portage, and oral argument by *W. H. Farnsworth.*

JONES, J. This is an action brought on promissory notes against *Brandts,* copartners, who for convenience will be called the defendants, who had entered into a contract with the *Austin Company* ((hereinafter called the company) for purchasing a dredge, and which was impleaded and against which defendants pleaded a counterclaim or cross-complaint. Since the two causes of action are entirely different they will be separately treated.

The plaintiffs were doing business in Chicago, and had an agreement with the company by which they undertook to buy accounts, indebtedness, or claims due the company from its customers. On July 27, 1916, plaintiffs took an assignment of the account due from defendants for the dredge which they had purchased. On the same date they purchased the nine notes to be given by the defendants to the company. These notes were not then executed, but were executed on August 2d and delivered to the company in consideration for the dredge purchased. It was the understanding when said assignment was made that the notes were to be turned over to the plaintiffs. When the assignment was made the indebtedness represented by the agreement was $5,000. The plaintiffs then paid the company eighty per cent. of this amount, less one per cent. per month

from the date of the assignment to the date of payment. The remaining twenty per cent. was to be paid upon collec-tion.

By a general written contract it had been provided that the plaintiffs should pay eighty per cent. of the face of accounts to be turned over, less discount; that the company should act as plaintiffs' agent in the collection of accounts so assigned, and as remittances were received should turn over the original checks or drafts, the company guaranteeing that the accounts should be paid over at maturity, and if not so paid it would pay to plaintiffs the face on demand and the accounts should thereupon be re-assigned to it; that certain services were to be rendered by plaintiffs to the company for which plaintiffs were to receive one per cent. for each thirty days or part thereof that accounts should remain unpaid to plaintiffs. The agreement also provided for an adjustment of their accounts and that plaintiffs, when they had received the amount advanced by them plus the agreed compensation, should re-assign to the company all accounts uncollected.

The amount paid to the company on the execution of the assignment above described was $3,725. The evidence does not disclose on what day the notes were indorsed to the plaintiffs or when they came into plaintiffs' possession. It does appear that they had been turned over before December 19, 1916, but by that time some of the notes were over-due and plaintiffs had notice. At the trial the plaintiffs offered the notes duly indorsed and rested their case. The defendants then offered a large amount of testimony tending to show fraud and a breach of warranty on the sale of the dredge, for the purpose of showing that plaintiffs were not holders in due course and to establish their counterclaim against the company. In considering whether the plaint-iffs were holders in due course we shall assume that the notes were obtained by means of fraudulent representations and will discuss that subject later.

The trial court held that under the statute as it existed

when the account was assigned the plaintiffs were not holders in due course.    That statute was as follows:

"Value is any consideration sufficient to support a simple contract.    An antecedent or pre-existing debt, discharged, extinguished or extended, constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.    But the indorsement or delivery of negotiable paper as collateral security for a pre-existing debt, without other consideration, and not in pursuance of an agreement at the time of delivery, by the maker, does not constitute value."    Sec. 1675—51, Stats. 1915.

It is not necessary to consider whether the plaintiffs were not holders of the notes for value on the ground that the indebtedness was assigned to them prior to the execution of the notes and because the notes were not executed in extinguishment, discharge, or extension of the debt.    It might be urged with some force that, in view of the testimony that it was agreed upon the assignment of the account to deliver the notes when executed, they were not given as collateral security for a pre-existing debt.    This point is only briefly discussed in the brief of respondents and not at all in that of-appellants.

There is another ground on which we base our decision that plaintiffs are not holders in due course.    We are sustaining the verdict of the jury and the separate findings of the court by which it was determined that the defendants were induced to buy the dredge and give the notes in question by means of fraudulent representations.    Under the facts so found, when the company negotiated the notes their title was defective within the meaning of the statute, sec. 1676—25, Stats. 1915.    That being so, the burden was on plaintiffs to prove according to sec. 1676—29 that they acquired the notes in due course.    In order to maintain this burden it was necessary to prove that they became the holders of the notes before they were overdue.    As before stated, there was no proof of the time when the indorsements were made or when the notes were delivered to plaintiffs.

Sec. 1676—15, Stats. 1915, provides: "Except where an

indorsement bears date after the maturity of the instrument, every negotiation is deemed *prima facie* to have been effected before the instrument was overdue."

This raises the question whether it suffices when one has taken a note from one whose title is defective to simply offer the note and the indorsement, or whether, notwithstanding the statute just quoted, he should offer further affirmative proof that he is a holder in due course.   Under the same statutes it has been held in Iowa that where the holder takes a note from one whose title is defective the burden rests upon him to show that he is the holder in due course, and that this involves something more than the mere presumption arising from an indorsement regular in form.   *O'Connor v. Kleiman,* 143 Iowa, 435, 121 N. W. 1088; *Bank of Bushnell v. Buck Bros.* 161 Iowa, 362, 142 N. W. 1004.   The same principle was declared in *Murphy v..Estate of Skinner,* 160 Wis. 554, 152 N. W. 172, where different statutes were construed.   In *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192, Mr. Justice MARSHALL, speaking for the court, said:

"But the rule in this state and generally, independent of the written law, is that where circumstances exist rendering the title of the original holder defective, or showing fraud in obtaining the paper, the burden is on the second holder to go further than to merely produce such paper.   He cannot rely upon the mere presumption which obtains, generally, but must carry the burden of showing that he is a holder in due course by proving facts sufficient to establish it."   Page 336.

Since there is no proof that the notes were indorsed or delivered before due, we must hold that the plaintiffs have not sustained the burden of proof imposed by the statute.

We now come to the counterclaim or cross-complaint of defendants against the company.   The agreement between the company, a corporation of Chicago, and the defendants, of Juneau county, Wisconsin, for the purchase of the dredge was very elaborate and we shall only enumerate its main features.   After providing for the execution of the notes

and mortgage and for the enforcement of the agreement by sale of the property in case of default in payment, there was a guaranty of good materials and workmanship, that the machine should show a capacity to excavate ordinary soil that can be readily spaded at the rate of thirty yards an hour, and an agreement to replace broken or defective parts on notice.  It was provided that the defendants should examine the machine on its arrival and promptly give notice of defects, giving the company reasonable time to make alterations to meet the objections.  There were detailed provisions for a trial of the machine, the company's agent being present, at which time any objections were to be made in writing, and after their being remedied by the company an acceptance was to be signed in the form set forth in the contract.  It was agreed that in case it should be found after the trial that the machine had not the capacity stated or that the defects were not removed, defendants might reject the machine and that the notes should be returned.  It was provided that there should be no claims for damages for latent defects, loss of earnings or services; that the company should have full opportunity to make repairs; that no representation or warranty, express or implied, as to the capacity of said machine or its fitness for any special work, or otherwise, or of or relating to said machine, should be made by first party unless therein expressly set forth.  It was agreed that title should remain in the company until the notes were paid and that a chattel mortgage should be executed.  The agreement also had the following clause:

"This agreement embodies the entire understanding between the parties hereto, and their liability hereunder shall not be affected by any statement or representation by either party to the other prior to or at the time of the execution hereof and not contained herein."

There was considerable evidence of the oral representations made before and at the time of sale which was received over the objection of the company.  One of the defendants

testified that he was told by the representative of the company that "he would build us a dredge that we could take our hats off to" and guaranteed it to fulfil the terms of the agreement to work in that soil; that they had many machines out in different states that were successfully operating in such soil and that he hadn't any complaint yet of this make or type of machine and that this machine would be built especially good and strong to do the work that they had; that it would move ahead by its own power; that the engine was a gas engine, that it would use kerosene entirely, only gas for starting. It was represented that the engine was to be of sufficient power to do the work expected of it and that the machine was to be brand new. There was evidence that the company knew the nature of the soil in which the dredge was to operate. One of the defendants testified that it was stated by the company's representative that the machine would be satisfactorily built, stout enough to stand the work; that they had machines out that were working in number one shape; that the traction mechanism on this machine was supposed to move ahead by its own power, that it was all right, strong enough, and everything to move ahead; that it was supposed to start on gasoline and then burn kerosene.

The testimony showed that the plaintiffs received at the office of the company a statement or specifications describing the machine in which the following representations were made:

"Machine can be taken down in three days; machine can be erected in three days. . . ." "The frame has been so designed to take care of all possible twist or tension resulting from uneven ground travel. . . ." "The A frame is securely guyed by tie rods to rear of main frame. . . ." "The boom is constructed of structural steel framing, spread at base and so proportioned and braced as to be rigid in every respect. . . ." "The power for operating is supplied by a kerosene engine of ample capacity for operating all actions either independently or simultaneously and is connected."

Appellants assign as error the admission of testimony as to the representations made at the time of the sale of the dredge. It is urged that the admission of the evidence violated the parol-evidence rule and that it was especially objectionable by reason of the clause in the contract purporting to exclude such representations. This testimony was offered and admitted on the theory that it tended to prove the allegations of the cross-complaint that the representations were fraudulently made and for the purpose of inducing defendants to enter into the contract.

To support their contention counsel cite *Jones v. Keefe,* 159 Wis. 584, 150 N. W. 954; *State v. Kenosha Home Tel. Co.* 158 Wis. 371, 148 N. W. 877; *Seitz v. Brewers R. M. Co.* 141 U. S. 510, 12 Sup. Ct. 46. In the first two cases no question of fraud was involved; in the third case it is said in the opinion there is no pretense of any fraud, accident, or mistake.

Appellants' counsel also cite and rely on the following cases: *Edward Thompson Co. v. Schroeder,* 131 Minn. 125, 154 N. W. 792; *General Electric Co. v. O'Connell,* 118 Minn. 53, 136 N. W. 404; *Elliott S. Co. v. Green,* 35 N. Dak. 641, 160 N. W. 1002. But as we read these cases they do not support the claim made. In all of them the representations were held admissible to show fraud in inducing the making of the contract, and in two of them the written contract contained clauses attempting to exclude such evidence.

It is argued that the representations only related to the warranties in the written agreement. The only warranties in the very elaborate agreement were that the machine would excavate thirty yards an hour and that it was of good workmanship and material. The representations above stated relate to various collateral facts not mentioned in the agreement.

We cannot concur in the view that a party to a contract can exclude fraudulent representations made to induce the

contract itself by inserting a clause that the agreement shall be the sole evidence of the transaction. Such a theory would permit the most flagrant frauds by an easy device. It is the well settled rule of this state that it is competent to show by parol that a contract was entered into relying on fraudulent representations. *Gross v. Drager,* 66 Wis. 150, 28 N. W. 141; *Bank of Evansville v. Kurth,* 167 Wis. 43, 166 N. W. 658; *Hurlbert v. T. D. Kellogg L. & M. Co.* 115 Wis. 225, 91 N. W. 673; *Hannon v. Kelly,* 156 Wis. 509, 515, 146 N. W. 512.

It is urged by appellants' counsel that the representations were not actionable because they related solely to future events or were mere expressions of opinion. It was also urged that this was a machine to be manufactured and not one already in existence. The testimony already quoted shows that this was represented to be a type of machine which had been successfully operated. It was as claimed by respondents' attorneys not a machine to be built upon special order but one of regular manufacture. From the testimony the defendants had the right to assume that the machine was in existence though not fully assembled. One of the defendants testified that when they were in Chicago they wanted to go to the factory to see the machine but the company's agent would not take them to see it. It is unnecessary to repeat or discuss in detail the testimony already referred to. We are satisfied that there were such statements concerning matters both of fact and opinion that they were properly submitted to the jury. Some of the statements related to existing facts as to which plaintiffs had, or ought to have had, superior knowledge, and they were statements on which defendants had the right to rely.

The jury and the court found that it was represented that the dredge was of a kind and construction such as to properly do the work desired; that the machine was equipped with a kerosene engine of ample capacity for operating all motions either independently or simultaneously; that it was equipped

with a traction mechanism sufficient to propel or move it by means of the power of the engine; that the machine could be set up or taken down in three days; that the defendants relied on the representations and that they were false.

While it is true that mere promises are not a basis for fraud, and that ordinarily fraud cannot be predicated on mere expressions of opinion, yet it is well settled that statements taking the form of expressions of opinion may under some circumstances be treated as statements of facts. *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790; *Karls v. Drake,* 168 Wis. 372, 170 N. W. 248; *Rogers v. Rosenfeld,* 158 Wis. 285, 149 N. W. 33; *Warder, B. & G. Co. v. Whitish,* 77 Wis. 430, 46 N. W. 540; 20 Cyc. 17.

In *J. H. Clark Co. v. Rice,* 127 Wis. 451, 465, 106 N. W. 231, Mr. Chief Justice CASSODAY, speaking for the court, said:

"As a general rule, a mere expression of opinion or belief as to the value or quality of an article sold, if so intended and understood, is not a representation of fact, and, though false, does not amount to fraud. The mere fact that a statement takes the form of an expression of opinion, however, is not always conclusive. Whenever there is any doubt as to whether it is made as a mere expression of opinion or as a statement of fact, the question must be determined by the jury or court."

No serious claim is made by appellants' counsel that the dredge corresponded with the representations which were made, and we conclude that the verdict of the jury and the findings of the court on this branch of the case are sustained.

It is claimed by appellants' counsel that defendants waived any right to complain of defects in the dredge by accepting it. There were two written acceptances of the dredge signed by defendants and prepared by the company's agent while he was at the place where they were attempting to operate the machine. The testimony shows that the agent well knew at these times that the dredge fell far short of complying with the agreement, and that these so-called acceptances, one

of which was signed on Sunday, were given in consideration of his promises as agent of the company that. the machine would be made to work satisfactorily. · The trial court found as follows on this subject:

"That said acceptances and letters were signed upon the condition, understanding, and with the assurance on the part of the company that it would nevertheless stand back of the machine and see that it was made to fulfil said representations and warranties, and without any intent on the part of the defendants *Brandt* to waive their right to insist upon its so doing."

For this finding there was ample proof.

We are satisfied that there was no release or waiver of the defendants' rights to claim damages for the fraudulent representations, and no such acceptance as precludes them from maintaining their counterclaim.  *Svoboda v. Barta,* 169 Wis. 338, 172 N. W. 719.   There are numerous cases in this state which support the view that the facts found in this case would not constitute an acceptance waiving a recovery where a breach of warranty or rescission is claimed. *Walter A. Wood M. & R. M: Co. v. Calvert,* 89 Wis. 640, 62 N. W. 532; *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669; *Lorenz v. Hart-Parr Co.* 146 Wis. 261, 131 N. W. 446; *J. I. Case T. M. Co. v. Johnson,* 140 Wis. 534, 122 N. W. 1037; *Greene v. Curtis A. Co.* 144 Wis. 493, 129 N. W. 410. For at least equal reason such facts would not prevent recovery for fraudulent representations.   See extended note, L. R. A. 1918A, 113.

The notes given by defendants were accompanied by their chattel mortgage on the dredge and this mortgage was assigned by the company to the plaintiffs as part of their arrangement.   Defendants failed to pay these notes which had been indorsed, and plaintiffs in December commenced proceedings to foreclose the mortgage.   There was a sale of the dredge under the mortgage and an affidavit was filed purporting to comply with sec. 2316c, Stats.   But the court found that it was not a compliance, and appellants' counsel

do not seriously question this finding.   The court also found
that there was no voluntary surrender of the dredge and that
the seizure was hostile.   As a conclusion of law the court
found that this failure satisfied and discharged the claim of
plaintiffs, and that defendants were entitled in addition to
the penalty of $25 imposed by the statute.

The testimony on this subject was very brief.   One of the
defendants testified as follows:

"I did not protest against the selling of the dredge.   My
father did not.   I voluntarily let the dredge be taken and
sold.   I told the people to take it and sell it under the
chattel mortgage. . . . I told Mr. Anderson to take the
dredge and sell it under the chattel mortgage; that we
wouldn't have no more to do with it.   I told him that at
Necedah the last time he was out there."

Although the statute in question was undoubtedly enacted
to prevent abuses which may have been serious, and although
like other statutes it is to be enforced by the courts, still it is
a harsh statute and if given too strict a construction may
work serious injustice to parties acting in perfect good faith.
In construing the statute in a former case Mr. Justice KER-
WIN said:

"It seems quite clear that the taking contemplated by this
statute is a taking *in invitum* under and by virtue of the
power to take and reduce to possession as given in the
mortgage.   The taking and sale under the mortgage within
this statute means a hostile taking by virtue of the right to
dispossess the mortgagor of his possession and property
under the power given in the mortgage.   The statute, we
think, is capable of this construction without doing violence
to its language, and in view of its highly penal character it
should receive such construction."   *Hammel v. Cairnes*, 129
Wis. 125, 107 N. W. 1089.

We are not able to construe the testimony above quoted
in the same manner as the trial court, and we therefore hold
that the taking was not hostile but was consented to by the
defendants, that the debt was not discharged thereby, and
that no penalty was incurred.

With abundant caution respondents' counsel pleaded facts

which would call for relief either on the ground of fraudulent representation or rescission or breach of warranty as the proof might develop. In the argument and briefs there has been considerable discussion of the law as to breach of warranty and rescission which in view of our conclusion does not require attention. The jury assessed the damages suffered by the defendants by reason of the false representations in the sum of $4,500. There had been paid to the company to apply on the account $1,000. The dredge was sold under the chattel mortgage before the action was brought and was bid in by the company for the sum of $1,000. Some proof was given by defendants of damages for the expense incurred in testing the dredge, but the trial court held that the evidence was so indefinite that it should not be submitted to the jury. We find no error in such action.

The court rendered judgment in favor of the defendants dismissing the complaint, for costs against the plaintiffs and the company, for damages against the company in the sum of $1,000 and interest, and for the penalty of $25 against the plaintiffs based on the statute and the holding that no proper affidavit was made after the chattel-mortgage sale. In view of our ruling that the taking of the property under the chattel mortgage was not hostile, the judgment should be modified by excluding the penalty, but in other respects it should be affirmed.

*By the Court.*—Judgment modified as indicated in the opinion, and as so modified affirmed. No costs to be taxed in this court, except clerk's fees to be paid by the plaintiff appellants.

ROSENBERRY, J. (*dissenting*). Inasmuch as there are a number of questions decided in this case, I feel that it is my duty to state my reasons for dissenting from the judgment of this court.

While the *Austin Company* contends that evidence as to conversations between the parties prior to the making of the contract was inadmissible, its first contention is that, if

admissible, the facts established thereby are not sufficient to form a basis of fraud. With this contention I agree. The undisputed evidence shows that the *Brandts* knew that they were purchasing a machine to be thereafter manufactured and delivered.

By the special verdict the jury found that the *Austin Company* induced the *Brandts* to purchase the dredge and execute the contract in question by making the following representations:

(a) That the dredge in question was of a kind, character, and construction so as to properly do the work for which Brandt & Son desired it.

(b) That the engine with which it was equipped was a kerosene engine of ample capacity to operate all motions either independently or simultaneously.

(c) That the dredge was equipped with a traction mechanism sufficient to propel or move it by means of the power of the engine.

The jury found that the defendants *Brandt* relied upon the representations (a), (b), and (c) and that the representations were false.

The contract and specifications prescribed the kind of engine with which the dredge was to be equipped and also provided the details as to the traction mechanism, and specified the amount of work which the dredge should be capable of doing in a given time when completed. If the dredge as manufactured and delivered did not comply with the contract and specifications, the contract provided the manner in which the dissatisfaction of the *Brandts* was to be expressed. While a promise to do an act in the future may or may not be a contract for the breach of which damages can be recovered, mere nonperformance of the promise is not a fraud. *Sheldon v. Davidson,* 85 Wis. 138, 55 N. W. 161; *Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 69 N. W. 820; *Seymour v. Cushway,* 100 Wis. 580, 76 N. W.

769; *Milwaukee B. C. Co. v. Schoknecht,* 108 Wis. 457, 84 N. W. 838; *James Music Co. v. Bridge,* 134 Wis. 510, 114 N. W. 1108.

I find no statements not covered by the contract that are shown by the verdict or findings to be untrue.

.The trial court found, in accordance with the undisputed facts, that the *Brandts* never attempted to return the dredge but pursued their rights under the contract to the end. Having elected to keep the goods, the *Brandts* might have recovered by way of recoupment their damages for breach of warranty (sec. 1684*t*—69, Stats.). In their answer the defendants *Brandt* allege that they had offered to return the goods and had done all things necessary upon their part to effect a rescission of the contract. Upon the trial no attempt was made to sustain the allegations of the answer in this respect. Upon the first trial of the dredge the defendants *Brandt* signed an acceptance in the following language:

"Gentlemen: Pursuant to the contract between yourself and ourselves dated May 23, 1916, for one Austin dry land dipper dredge, the undersigned has this day witnessed the demonstration of said machine and accepts the same as being. in full compliance with said contract and without further obligation on your part except as noted on the back of this acceptance."

On the back of the acceptance appeared a notation that certain castings and parts were to be furnished, that a dipper of different capacity was to be supplied, if requested.

In October there was a second trial of the dredge and a second written acceptance was made, which bears date on Sunday, October 9, 1916. As a condition of signing that acceptance the defendants *Brandt* demanded and received a credit of $240 for repairs to the boom. After the dredge had been tried and the acceptances signed the *Brandts* sought to have the time of payment of the notes given therefor extended. *Tunis Brandt* testified:

"I came to Grand Rapids after these notes were placed

for collection to see about settling the matter up.    I made no objection at that time that there was any fraud.    All I wanted was an extension of the time on my note."

There was no claim that the signatures in the acceptances were procured by fraud.    The trial court found that the signatures were, however, qualified by agreement of the parties to the extent that the *Austin Company* agreed to stand back of the machine.

. While the answer of the defendants *Brandt* contained a counterclaim for damages for breach of warranty, the case was not tried upon that theory.    In my opinion the judgment should be reversed and the case sent back for a new trial, first, as to whether or not there was a qualified acceptance of the machine; and, if so, whether there was a breach of warranty and the amount of damages sustained by the defendants *Brandt* by reason thereof.

I am authorized to say that Mr. Justice ESCHWEILER concurs in this opinion.