88   647
92   402

88      647
52 LRA 61n
52 LRA 254n

Tufts, Appellant, vs. Weinfeld and another, Respondents.

*October 30 — November 13, 1894.*

*Sale of chattels: Article to be manufactured: False representation: Un-authorized rescission: Measure of vendor's damages: Pleading.*

1. As an inducement to the giving of an order for a soda-water fountain, the manufacturer's agent promised orally that he would not sell any fountain of that make to any one else on the same street, and the vendees relied on such promise, but the agent intended to break it and did break it. *Held*, that there was not such a fraud or false representation as would entitle the vendees to rescind or cancel the order. *Lee v. Simmons*, 65 Wis. 523, distinguished.

2. The order being for a soda-water fountain to be manufactured, and having been countermanded, the vendor had no right to go on and manufacture the fountain for the purpose of charging the full contract price or to increase the damages for the breach.

3. The damages recoverable in such case are the profits which the vendor would have realized had both parties performed the contract.

4. Although, after the order had been countermanded, the vendor completed the fountain and tendered it to the vendees and then brought his action for the whole contract price, yet, the profits which he would have realized having been proven without objection, he might recover them in said action, and the complaint will be deemed to have been amended accordingly.

NEWMAN, J., dissents, being of the opinion that the order in question was not one for a soda-water fountain to be manufactured, but for the specific articles which go to make up a fountain, and which are usually kept in stock and can be bought in the market, and that the measure of damages is the difference between the value of the goods at the time of the refusal to receive them and the price agreed upon.

APPEAL from the Circuit Court for *Marathon* County. The plaintiff is a manufacturer and dealer in soda-water apparatus at Boston, Mass., and the defendants are in business at Wausau in this state. On May 16, 1892, the defendants wrote to the plaintiff, in effect, inquiring what discount and inducements he could offer them on said foun-

tains. On May 26, 1892, the plaintiff's agent, Feldman, appeared at Wausau, and obtained a written order from the defendants to the effect that the plaintiff should forward a soda-water apparatus therein specifically described, and agreeing to pay therefor the sum of $500, to wit, to honor draft of $75 upon receipt of bill of lading of the same, and to pay the balance in sums of $20 per month until the whole should be paid. Afterwards, and on the same day, the defendants applied to said agent to release or return said written order, but he refused to do so. Thereupon, and on the same day, the defendants telegraphed to plaintiff, at Boston: "Cancel order given your agent. Letter by next mail." On May 27, 1892, the defendants wrote the plaintiff, referring to the telegram, that his agent had sold another fountain in Wausau, contrary to their verbal understanding, and that they had requested said agent, Feldman, to release the order, and that he had refused to do so, and that they must respectfully request the plaintiff to do so, and oblige.

In October, 1892, the plaintiff commenced this action for the breach of said contract. The complaint contains the usual allegations in such cases, and demands judgment for the $500, with interest from June 16, 1892, and costs. The defendants answered said complaint by way of admissions and denials, and alleged, in effect, that the contract had been procured by false representations. They also served on the plaintiff's attorney, with the answer, an offer in writing that the plaintiff might take judgment for the sum of $10 and costs.

At the close of the trial the jury returned a special verdict to the effect: (1) That the plaintiff's agent, Feldman, did represent to the defendants, before the contract for the soda-water fountain was signed by them, that he would not thereafter sell to any dealer on Third street, in the city of Wausau, any soda-water fountain of plaintiff's make;

(2) that the defendants did rely upon such representations as a condition of making said contract; (3) that the plaintiff's agent, Feldman, did make such representations for the purpose of inducing defendants to enter into such contract; and (4) that at the time such representations were so made the plaintiff's agent, Feldman, did intend to sell a soda-water fountain to other dealers on Third street, if they would buy.

Both parties thereupon moved for judgment; and the court filed an opinion and decision in writing upon said motions, finding that the plaintiff is entitled to recover of the defendants the sum of six cents damages. And it appearing further that at the time of the service of the answer, and more than ten days prior to the opening of the term when said action was brought on for trial, the defendants duly served upon the plaintiff an offer of judgment for the sum of $10 and costs to that date, which said offer was not accepted, and that defendants' taxable costs subsequent to the date of such offer of judgment amounted to $35.41, it was ordered and adjudged that said defendants do have and recover of said plaintiff the sum of $35.35, the same being the amount of said costs, less the sum of six cents. From that judgment the plaintiff appeals.

For the appellant there were briefs by *Curtis & Reid,* and oral argument by *A. H. Reid.*

For the respondents there was a brief by *Mylrea, Marchetti & Bird,* and oral argument by *Claire Bird.* They contended, *inter alia,* that the false representation of the plaintiff's agent, though in the form of a promise, was a fraud. 1 Bigelow, Fraud, 484; Cooley, Torts, 486; *Lee v. Simmons,* 65 Wis. 523; *Burrill v. Stevens,* 73 Me. 395, 400; *Laing v. McKee,* 13 Mich. 124, 126; *Abbott v. Abbott,* 18 Neb. 503; *Dowd v. Tucker,* 41 Conn. 197; *Keith v. Herschberg O. Co.* 48 Ark. 138; *Darnaby v. Watts,* 21 S. W. Rep. 333. A vendor cannot arbitrarily insist on a full performance after a countermand, when to do so does not

benefit him at all, but only increases the damages to the vendee. Bish. Cont. §§ 837, 841; 2 Suth. Dam. (1st ed.), 361, 362; *Dillon v. Anderson*, 43 N. Y. 231; *Clark v. Marsiglia*, 1 Denio, 318; *Danforth v. Walker*, 37 Vt. 239; *Derby v. Johnson*, 21 id. 17; *Nebraska City v. N. C. H. G. L. & C. Co.* 9 Neb. 339; *Moline Scale Co. v. Beed*, 52 Iowa, 307; Newmark, Sales, § 392; *Davis v. Bronson*, 2 N. Dak. 300; *Gibbons v. Bente*, 51 Minn. 499; *Tufts v. Lawrence & Co.* 77 Tex. 526; *Sonka v. Chatham & Co.* 2 Tex. Civ. App. 312; *Hosmer v. Wilson*, 7 Mich. 294; *Collins v. Delaporte*, 115 Mass. 162; *McClair v. Austin*, 17 Colo. 576; *Bradley v. Denton*, 3 Wis. 557; *Poposkey v. Munkwitz*, 68 id. 322; *Milwaukee Boiler Co. v. Duncan*, 87 id. 120. This was merely an executory contract at the time the countermand was received. 2 Suth. Dam. 353; 1 Benj. Sales (Corbin's Notes), § 308; *Tufts v. Lawrence & Co.* 77 Tex. 526; *Cockburn v. Ashland L. Co.* 54 Wis. 619; *Neal v. Shewalter*, 5 Ind. App. 147. Profits are the measure of damages for breach of contract of sale only when it appears that the commodity has no market price. 1 Suth. Dam. 109; *Cockburn v. Ashland L. Co.* 54 Wis. 619; *Dolph v. Troy L. M. Co.* 28 Fed. Rep. 553. Contract price less market value is the true measure of damages. Newmark, Sales, § 392; 1 Suth. Dam. 107; 2 id. 359; *Chapman v. Ingram*, 30 Wis. 290; *Sonka v. Chatham & Co.* 2 Tex. Civ. App. 312; *Tufts v. Lawrence & Co.* 77 Tex. 526; *Tufts v. Grewer*, 83 Me. 407; *Neal v. Shewalter*, 5 Ind. App. 147. The vendee is required to repurchase in the open market in order to reduce the damages he is to demand of the vendor. 1 Suth. Dam. 107; *Cockburn v. Ashland L. Co.* 54 Wis. 619; *Hammer v. Schœnfelder*, 47 id. 455. The same reason would require the vendor to resell in the open market for the same purpose.

CASSODAY, J. Were it not for the written opinion of the trial court in the record, it might be difficult to ascertain just what questions were determined by that court. So

much of that opinion as is necessary to a full understanding of the questions presented here for decision should have been printed in the case, as required by Rule VIII, as amended. As to such records as were filed with the clerk of this court prior to the publication of the new Rule VII½, it is, of course, impracticable to readjust and arrange chronologically the contents thereof, as prescribed by that rule; but there is no difficulty in paging the same as therein directed, nor even, in such cases, in arranging the same chronologically in the printed case, as prescribed by Rule VIII, as amended, and so there is no difficulty, even in such cases, to make the brief conform to Rule IX, as amended. When the contents of the record are so rearranged in the printed case, the brief should refer to the pages of the case, as well as to the pages of the record. By conforming to these rules, much time and expense will be saved, and this court greatly aided in ascertaining the points involved. What has been said is not so much in reference to this case, as a general announcement, which it is hoped will be cheerfully followed.

We fully concur with the conclusion of the trial court, to the effect that the false representations alleged in the answer and found in the special verdict consisted merely of an oral promise made by the plaintiff's agent at the time not to sell a soda fountain to certain other parties in Wausau. Such alleged false representations did not relate to any existing fact *in præsenti*, but only to future sales. Such false promise was no ground for avoiding the written contract. It is entirely unlike a case where a merchant orders goods, knowing himself to be insolvent, without disclosing his insolvency, with the preconceived purpose of not paying for them at all, as in *Lee v. Simmons*, 65 Wis. 523, relied upon by counsel. In such case the existing fact of known insolvency is the important factor. For the reason given the trial court properly disregarded the special verdict found by the jury.

We further agree with the learned trial court that the plaintiff did not have the soda fountain manufactured and in stock when the order was received by him, but that, to fill the order according to the contract, it would have been necessary for the plaintiff to have manufactured certain parts of the soda fountain, and constructed the same. In other words, the contract was executory for the manufacture of the particular soda fountain specifically described therein. It is undisputed that, prior to the time when the order was countermanded and the contract thus broken by the defendants, the plaintiff had done nothing towards the performance of the contract, and in fact had not received the order. Such being the facts, we fully concur with the trial court in holding, in effect, that the plaintiff had no legal right, after the defendants had thus notified him that they would not accept the soda fountain and countermanded the order, to go on and manufacture and ship the same, for the purpose of holding the defendants for the full contract price, or to increase the damages for the breach. To hold otherwise would practically convert the action for the breach of the contract into an action to enforce the specific performance of the contract. We therefore agree with the trial court, and hold that the plaintiff's legal right to perform the contract was terminated when the defendants so countermanded the order, and that thereupon the plaintiff was relegated to his action for his damages sustained by reason of such breach. *Cameron v. White,* 74 Wis. 425.

The question recurs, What is the true measure of damages in such a case? The trial court held that the correct measure of damages in cases of this kind is the difference between the contract price and the market price of the soda fountain; that is to say, six cents. The difficulty in applying such a rule in such a case is apparent from another portion of the opinion mentioned, where it is said that at the time of the breach "there was no property in existence to which the contract could apply." If, as indi-

cated, the plaintiff had no legal right, after the order was countermanded, to manufacture the soda fountain, in order to compel the defendants to pay the full contract price, then, for the same reason, the defendants had no right to deduct from the contract price what the plaintiff would have realized had he manufactured the same as specified in the contract and then sold it in the market. So we think, in a case like this, the measure of damages sustained must be the same as though the plaintiff had not manufactured the soda fountain at all. The defendants, having thus broken their contract, are manifestly bound to make good the loss which the plaintiff actually sustained by reason of such breach. Such loss is necessarily equivalent to the net profits which the plaintiff would have realized had the contract been performed by both parties. If this were not so, a contract otherwise valuable would, by construction, be rendered valueless. The case of *Hinckley v. Pittsburgh Steel Co.* 121 U. S. 275, is directly in point. Mr. Justice BLATCHFORD, speaking for the whole court, there said: "Actual damages clearly include the direct and actual loss which the plaintiff sustains *propter rem ipsam non habitam*. And, in case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise. And to deprive him of it, when the party has broken the contract and unlawfully put an end to the work, would be unjust. There is no rule of law which requires us to inflict this injustice. Whenever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market, are referred to, and not the difference between the agreed price of something

contracted for and its ascertainable value or cost." To the same effect is *Cameron v. White*, 74 Wis. 431, 432. Mr. Justice TAYLOR, speaking for the court, there said: "The plaintiffs took no steps to perform the contract after they were notified by the defendant that he refused to perform it on his part. The rights of the parties under the contract were fixed at that time. . . . That the profits which the plaintiffs could have made on the contract, if they had been permitted to perform the same, is the correct rule of damages, and the one most in accordance with equity, is apparent from many considerations." To the same effect is *Corbett v. Anderson*, 85 Wis. 224, and cases there cited; and we do not think there are any cases in this court to the contrary. True, the plaintiff in this case manufactured, shipped, and tendered the soda fountain to the defendants, and thereupon brought this action for the whole contract price. It may be that the complaint is technically defective, by failing to specifically allege such loss or damage; but the plaintiff was allowed to prove, without objection, that he would have realized, upon the performance of the contract, a net profit of at least $100. Had such objection been made, the trial court would undoubtedly have allowed the complaint to be amended in that particular. For the purposes of this appeal, it must be deemed to be so amended.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

NEWMAN, J. It is a mistake to treat the order upon which this action is founded as an order for a soda-water fountain to be manufactured. A soda-water fountain, as such, whether completed or to be manufactured, is not mentioned in the order. The order is, "Forward the following described soda-water apparatus," as of something already manufactured and in stock. This is followed by

the mention of several specific articles, such as go to make up a complete soda-water fountain. These are all such articles as can be bought in the market, and are usually kept in stock by those engaged in that business. They are not referred to in the order as things to be made or completed or fitted. On its face, the order is for goods in existence, and not for goods to be made. There is nothing in the case which shows that these goods could not be bought in the market, nor that they were in any way peculiar or unusual, nor that they were not readily salable for the price which the defendants were to pay for them. Doubtless, the plaintiff should recover such damages as he shows to have been the natural result or consequence of the refusal of the defendants to receive the goods. These are such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342, 353. Both parties evidently considered these goods as such as could be bought and sold readily in the market, and could have naturally contemplated no further damage to the plaintiff than that he lost the sale of his goods. It was not in contemplation that the goods were not, at the time of the breach of the contract, readily salable in the market. Nor does the evidence show that they were not so readily salable. In such a case the rule of damages is the difference between the value of the goods at the time of the refusal to receive them and the price agreed upon. *Ganson v. Madigan*, 13 Wis. 67–72; *Chapman v. Ingram*, 30 Wis. 290; *Gordon v. Norris*, 49 N. H. 376; *Allen v. Jarvis*, 20 Conn. 38, 53; 21 Am. & Eng. Ency. of Law, 576 *et seq.* The evidence does not show that the goods were not worth the agreed price. The circuit court fixed the plaintiff's damages by the proper measure.