Milwaukee Smelting & Refining Company, Respondent,
vs. Lindenberger, Appellant.

*December 10, 1909—March 16, 1910.*

*Corporations: Subscription to stock: Tender of certificate: Release of subscriber: Abandonment of enterprise: Examination of of- ficer as adverse witness: Harmless error.*

1. Tender of a stock certificate is not a condition precedent to lia- bility upon a stock subscription, in the absence of any stipula- tion to that effect in the agreement.

2. Where a subscriber to stock who has paid only a portion of his subscription tenders his resignation as an officer and director and states his decision not to take any more stock than he has already paid for, action of the board of directors in accepting his resignation and instructing the secretary to send him formal assignments for the transfer of his subscription (which the sub- scriber never executes or returns) is insufficient to effect the cancellation of his subscription or to release him from liability thereon.

3. Proof of the sale of the property of a corporation and a suspension of business activity for the time being does not show such an abandonment of the business enterprise for which the corporation was organized as will relieve from liability a subscriber for stock, where it does not appear but that the company may resume its business upon payment of the unpaid stock subscription.

4. Refusal to permit the examination of the former secretary of the plaintiff corporation as an adverse witness did not affect the substantial rights of the defendant in this case, he having been accorded the privilege of a full examination upon everything pertaining to the issues, and the material facts having been presented to the court.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

Steps were taken for the organization of the plaintiff corporation with a capital stock of seventy-five shares of the par value of $100 each, and at a meeting on July 26, 1906, the defendant and five others delivered to the plaintiff their subscription agreement, whereby each of the six persons subscribed for seven and one-half shares of stock; the par value of five shares to be forthwith payable in cash, the remaining $250 to be payable pursuant to the call of the board of directors. Defendant paid $100 on his subscription. Defendant was present and participated in the stockholders' meeting and was elected a member of the board of directors. At the meeting of the board which was held later in the day he was elected president of the board. On August 30, 1906, the defendant wrote to the plaintiff resigning the offices of president and director and stating:

"Owing to the arrangements you have made without my consent, I have decided not to take any more stock than I have paid in."

At the meeting of the directors held on the next day the resignations were accepted. The minutes of the meeting show the following:

"It was moved and seconded to instruct the secretary to notify *H. Lindenberger* of the acceptance of his resignation

as president and director; also to send him agreements for the transfer of his subscription to the capital stock as he expressed his desire to withdraw from the company."

On the same day the secretary wrote the defendant, stating among other things:

"Your resignation as president and director does not relieve you from your liability on your subscription. You still owe the *Milwaukee Smelting & Refining Company* $400 on your subscription to capital stock, which is owing without call, and $250 which is subject to the call of the board of directors. However, there are other responsible parties who are willing to assume your unpaid subscription and take the six and one-half shares for which you are still liable. If you will sign the inclosed assignment to the right to such six and one-half shares and return it, you will be released from further liability on your subscription. If we find a purchaser for the share of stock it will be taken off your hands. You may also execute the inclosed assignment of the one share held by you and send it to the First National Bank of this city with instructions that if $100 is paid on your account the assignment should be delivered. In such case as soon as we have a purchaser for such share of stock we shall cause the $100 to be paid to the bank."

On September 5, 1906, the secretary wrote the defendant as follows:

"Referring to your conversation with Messrs. Sadek and Levy, we wish to inform you that the writer has sold the six and one-half shares of stock for which you have subscribed, and also the one share for which you have paid, without the knowledge of Messrs. Sadek and Levy. [Sadek, Levy, and the secretary composed the board of directors.] The transfer agreements, which we sent you, we desire to have signed and returned, so that we are not obliged to put your letter of August 30th on file, as evidence of your desire to withdraw from this company. At the present time we have no stock for sale, but should we desire at any future date to increase our capital we possibly will give you a chance to subscribe for a portion of the same. . . . Thanking you for your prompt return of transfer agreements, we remain."

At a special meeting of the stockholders on December 11, 1906, the plant of the company was sold. The plaintiff brought this action to recover the $400 alleged to be due from the defendant on his subscription. This is an appeal from the judgment entered on the verdict directed by the court in favor of the plaintiff, which judgment amounts to $513.33.

For the appellant there was a brief by *Burke, Alexander & Burke,* and oral argument by *Louis A. Lecher.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *Nathan Glicksman.*

The following opinion was filed January 11, 1910:

SIEBECKER, J. The facts show that the defendant and five other persons had subscribed for the capital stock of the plaintiff company and agreed "to pay his subscription to the amount of five (5) shares forthwith in cash without resolution or call;" and the remainder upon call of the board of directors; that this agreement was accepted by the company by corporate action, in which the defendant took part as stockholder; and that the defendant pursuant to such agreement paid for one share, participated in the company's organization, accepted the offices of director and president, and entered upon the discharge of his official duties by engaging in the conduct of the business and the management of its affairs. This amply establishes that the defendant was a member of the company and a stockholder and was liable for the amount of his unpaid stock upon the terms and conditions of the subscription agreement theretofore accepted by the company. We find no stipulation or condition in this stock-subscription contract requiring tender of a certificate as a condition of payment for the stock. It is apparent that nothing of this nature was contemplated by the parties, and it is manifest from the facts and circumstances that the company was ready and willing to deliver the proper certificate of stock to the defendant whenever he performed his obli-

gation by payment of the amount due on his stock subscription.

It is claimed that the plaintiff released and canceled defendant's liability as a stock subscriber. This claim is founded on the defendant's letter to the company of August 30, 1906, and the action thereon. In this letter the defendant tendered his resignation as president of the board of directors and as a director of the company. He also states that he had "decided not to take any more stock than he had paid in," and if it were preferred not to have him hold any stock he would be pleased to sell the paid-up share at the cost price. The board of directors on the following day, at a regular meeting, accepted defendant's resignation as president and director and instructed the secretary to notify the defendant thereof, and, in view of his expressed desire to withdraw from the company, to send him formal agreements for the transfer of his capital stock. Notice of this action of the board of directors was immediately communicated to the defendant by the letter of the secretary, which stated that his resignation from the offices did not release him from liability on his stock subscription, suggested that other parties stood ready to purchase his unpaid stock, and stated that if he would sign and return the inclosed agreements, assigning the stock, he would be released from further liability. Defendant never executed or returned these agreements. The steps taken by the officers of the corporation are insufficient to effect a cancellation of defendant's stock subscription, nor do they operate to release him from his liability.

The claim that defendant's stock had in fact been sold by the company's officers is not sustained by the evidence. In their most favorable light the evidential facts tend to show that there may have been negotiations for such a sale by some of the officers, but the evidence fails to show that a sale of the stock was ever consummated.

The contention that there was an abandonment of the en-

terprise for which the corporation was organized is not established. The facts at most show a sale of the property it owned and a suspension of business activity for the time being. There is, however, no showing that there has been a total and final abandonment of the business enterprise for which the corporation was organized, nor does it appear but that the company may resume its business upon payment of the unpaid stock subscription. Under the circumstances the defendant is not relieved from liability upon this ground.

An exception is urged to the refusal of the court to permit the appellant, under sec. 4068, Stats. (1898), as amended by ch. 271, Laws of 1907, to examine the company's former secretary as an adverse witness. We have examined the record and find that the ruling in no way affected the substantial rights of the appellant. He was substantially accorded the privilege of a full examination upon everything pertaining to the issues of the controversy, and the material facts were presented to the court. Hence the substantial rights of the defendant were not affected. Sec. 2829, Stats. (1898), and sec. 3072m, Stats. (Laws of 1909, ch. 192).

*By the Court.*—Judgment affirmed.

Timlin, J., took no part.

A motion for a rehearing was denied March 16, 1910.