First National Bank of Fairchild, Appellant, vs.
Hizer, Respondent.

*February 9—March 9, 1926.*

*Corporations: Subscription to stock: Consideration: Mutual sub-
scriptions: Note given in payment: Fraud: Statement by offi-
cer that maker would never be called upon to pay note.*

1. Where a subscription to the stock of a canning company was
made with the agreement that it would not be operative unless
a named amount was subscribed, and the subscription list was
signed by the defendant in consideration of the other sub-
scriptions, the total of which aggregated more than the
amount designated, the subscriptions were complete irre-
spective of whether or not notes were given in payment
thereof.  p. 363.

2. The statement of a stockholder in the canning company, and who was also vice-president of the bank which purchased the note of the defendant given ʻin payment of his subscription, that the maker would never have to pay the note, was not a statement on which fraud could be predicated or on which the maker had a right to rely; nor could the statement be invoked to vary or modify the terms of the note.   p. 364.

APPEAL from a judgment of the circuit court for Clark county: E. W. CROSBY, Circuit Judge.   *Reversed.*

This is an action to recover on a promissory note.   The answer admits signing the note, denies that there was any consideration therefor, alleges that its execution was induced by certain fraudulent representations, that its delivery was conditional, and that plaintiff is not a holder in due course.

It appears that in the spring of 1921 the Wisconsin Canned Food Company was in an embarrassed financial condition, and there were several meetings of stockholders at the village of Fairchild to consider the financial condition of the corporation and to devise ways and means of relieving the financial embarrassment.   The stockholders were told by officers of the company that the situation called for an additional investment of $86,000.   It seems that at first an effort was made to sell new stock of the company to the amount of $86,000, but that it soon became apparent that such an amount of stock could not be sold.   It was then decided to have the stockholders of the company guarantee the payment of a note for $50,000 signed by the corporation and to sell $86,000 worth of stock.   There seems to be no question but that the note of the corporation for $50,000 was duly executed, guaranteed by the stockholders of the company, and duly negotiated.   It is not disputed that subscriptions were taken for a considerable amount of the stock of the corporation, but just the amount of such subscriptions is the principal question in issue.   Respondent subscribed for ten shares of the par value of $1,000.   He

executed his note to the company for $1,000 and a certificate for ten shares of stock was issued to him. The note was sold and assigned by the company to the plaintiff bank. Upon its becoming due a renewal note was executed by respondent, and this action is brought to recover on the renewal note.

Defendant contended that it was the agreement between the stockholders as well as between the stockholders and the company to raise the sum of $86,000, including the amount raised on the $50,000 note, and if such sum was not raised the subscriptions to the stock were to be void. The jury found that such was the agreement, and that there were not enough subscriptions of stock to make up the sum of $86,000. Upon this verdict judgment was rendered in favor of the defendant, from which plaintiff appealed.

For the appellant there was a brief by *E. M. Bradford* of Augusta and *Linderman, Ramsdell & King* of Eau Claire, and oral argument by *G. O. Linderman.*

For the respondent there was a brief by *Rush & Devos* of Neillsville, and oral argument by *W. J. Rush.*

OWEN, J. It is undisputed that defendant subscribed for stock in the Wisconsin Canned Food Company in the sum of $1,000. If this subscription was made with the agreement and understanding that it should not be binding unless sufficient subscriptions to the stock to aggregate $86,000, together with the $50,000 raised upon the guaranty note of the company, were made, then the subscription was a conditional one and not binding unless it appears that the required amount was subscribed. *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192. The principally contested issue upon the trial was whether the requisite amount of stock had been subscribed to raise the sum of $86,000. Early in the trial it appeared that subscription lists were circulated among the stockholders, but such subscription lists were not

produced, and no one seemed to know where they were. The agreement set forth in the statement of facts was established by the evidence of witnesses, and one or two witnesses testified that the subscriptions were not enough to make up the sum ·of $86,000. It appears, however, that the witnesses who so testified did not have definite knowledge upon the subject. One witness testified that he knew that the requisite amount was not raised because he stood around the table where the subscription list was being signed and made a note or memorandum as the subscribers set down their names, and he remembered that the subscriptions then made were not sufficient to aggregate $86,000. He knew nothing of other subscription lists that were circulated and signed at other times and places. Just before the close of the trial, however, the attorney for the plaintiff produced the original subscription lists, and they were offered in evidence by the defendant's attorney and received. There were four such lists, and all were headed thus:

"We, the undersigned, for value received and in consideration of each other's subscriptions, hereby subscribe and agree to pay for the number of shares of stock at $100 per share, in the Wisconsin Canned Food Company, set opposite our respective names. We understand the condition of that company and are making our respective subscriptions with that understanding."

This appeared in typewriting on all of the lists. On one of the lists, which was more generously signed than the others, the following was added in writing after the typewritten portion above quoted: "This agreement to be void unless the full amount of $86,000 is subscribed." The four lists contained subscriptions totaling $39,400. This was more than the requisite number. But after many of the signatures on the list appeared the word "signed." The significance of this word cannot be determined by an in-

spection of the various lists. However, it appears that after signing the subscription list many of the subscribers executed their notes to the company for the amount of their subscription, and that as these notes were executed and delivered the word "signed" was written after their name upon the subscription list.

The respondent contends that while it is true that the subscriptions for stock totaled, together with the $50,000 note, more than $86,000, yet it appears from these lists that many who subscribed for stock did not sign notes to the company, and that the signing of the notes is the real test as to whether the requisite amount to satisfy the conditions was secured. We think this contention untenable. These various subscriptions to the stock of the corporation constituted enforceable agreements and bound each and every subscriber to pay for the amount of stock subscribed by him if an amount sufficient to satisfy the condition was actually subscribed. *Gibbons v. Ellis,* 83 Wis. 434, 53 N. W. 701; *Milwaukee B. & C. Co. v. Schoknecht,* 108 Wis. 457, 84 N. W. 838; *Milwaukee S. & R. Co. v. Lindenberger,* 142 Wis. 273, 124 N. W. 272. The signing of notes by the subscribers to the stock added nothing whatever to their liability. By refusal or failure to sign notes they did not escape the liability which they incurred by signing the subscription agreement. They might have chosen to pay cash rather than to sign notes, and whether they paid cash for their stock or simply defaulted on their subscription does not appear from the records in this case. From these lists, introduced in evidence at almost the last minute of the trial, it appears conclusively that subscriptions sufficient to satisfy the condition pleaded in the answer and relied upon as a defense were secured, and that, considering all subscriptions subject to that condition, they are all valid and enforceable, and it must be held that this defense is not established.

The defendant testified, and the jury found, that prior to signing the note W. F. Hood stated to the defendant that he would never have to pay the note; that the Wisconsin Canned Food Company would take care of the note and pay the interest; and when the company had earned sufficient funds, the note was to be returned to the defendant and stock to the amount of $1,000 issued to him for the use of his name on the note. Mr. Hood was vice-president of the plaintiff bank, a stockholder in the Wisconsin Canned Food Company, and took an active interest in promoting the plan for raising the necessary money to meet the exigencies of the Wisconsin Canned Food Company. While the court deemed this statement which the jury found to have been made by Mr. Hood of sufficient materiality to make it the basis of a question in the special verdict, we are at a loss to see how it has any bearing upon the case. In the first place, that Mr. Hood made any such statement seems very doubtful, in view of the fact that a certificate for ten shares of stock was issued to the defendant within three days after he signed the note, and that every certificate of stock was deposited as collateral security with the note. But however that may be, Mr. Hood was not an officer of the Wisconsin Canned Food Company, and was not in any manner authorized to act for or on its behalf. In the second place, the statement was not the representation of an existing fact. It was not even a promise to do anything in the future. Concededly Mr. Hood was not speaking for himself, and he had no authority to speak for the corporation. The most that may be said for the statement was that it was a prophecy on the part of Mr. Hood as to what the company would do in the future. It was not a statement upon which fraud can be predicated or upon which the respondent had any right to rely. Neither may it be invoked to vary or modify the express terms of the written note.

As to both propositions, see *Derbeck v. Albright,* 186 Wis. 515, 203 N. W. 337.

Were it not for the fact that the defenses set up by the defendant are sufficiently negatived by the foregoing considerations, it would be interesting to inquire whether, in view of the fact that the stock for which the respondent subscribed was actually issued to and received by him, defendant is estopped to deny his liability to pay for stock which he has received.

The statutory requirement of sec. 182.06 that corporate stock shall not be issued except in consideration of money, or of labor, or property, estimated at its true value, actually received by the corporation and equal to the par value of the stock, casts some doubt upon the status of stock issued in exchange for a mere promissory note. It may be that such stock is void and also it may be that the note is nevertheless enforceable. 4 Thompson, Corp. (2d ed.) p. 511. In view of the fact that this question was not raised or argued, and our decision rests upon other satisfactory grounds, we shall do no more than merely indicate that the matter has not escaped our attention.

It appearing that there is no defense to the note even in the hands of the original holder, it is unnecessary to consider whether the bank is a *bona fide* holder of the note.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment as prayed for in the complaint.