ANDERSON and wife, Respondents, vs. TRI-STATE HOME
IMPROVEMENT COMPANY, Appellant.*

*December 8, 1954—January 11, 1955.*

* Motion for rehearing denied, without costs, on March 8, 1955.

458

For the appellant there was a brief and oral argument by *Martin J. Price* of Milwaukee.

For the respondents there was a brief by *Woolsey & Wrzosek* of Beloit, and oral argument by *Robert F. Wrzosek*.

CURRIE, J. The contract entered into between plaintiffs and defendant company under date of April 6, 1950, contained the following clause:

"The company prohibits the making of any promises, or representation, unless it is inserted in writing in this agreement before signing. . . ."

The first question which faces us on this appeal is whether such clause is effective to bar plaintiffs' cause of action grounded upon the alleged false representations of defendant's president and agent which induced the plaintiffs to enter into the contract. Upon the authority of *Shepard v. Pabst* (1912), 149 Wis. 35, 135 N. W. 158; *Jones v. Brandt* (1921), 173 Wis. 539, 181 N. W. 813; and *Morse Chain Co. v. T. W. Meiklejohn, Inc.* (1941), 237 Wis. 383, 296 N. W. 106, we conclude that it is not.

An excellent statement of the policy reasons which have caused courts to refuse to construe so-called "integration" clauses, and contract clauses attempting to bar liability for false representations, as being effective to bar causes of action based upon fraudulent representations inducing a contract, is set forth in *Bates v. Southgate* (1941), 308 Mass. 170. 182, 31 N. E. (2d) 551. 558. as follows:

"As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

Restatement, 1 Agency, p. 579, sec. 260, states in effect that a principal, by inserting in a contract that he is not liable for the representations of his agent, may relieve himself from liability in an action for deceit to recover damages for the agent's fraudulent representations inducing the execution of the contract, but cannot by such a clause bar the other party's cause of action for rescission. However, 3 Williston, Contracts (rev. ed.), p. 2283, sec. 811A, points out that such rule, in so far as it relates to the barring of an action of damages for deceit, is not applicable where the fraud is attributable to the principal. In the case at bar, the defendant did not contend that Spector, its president, was not authorized to make the false representations claimed by the plaintiffs, but denied that any such representations were

made by him. It seems to us that, where a corporation clothes its president with authority to execute a contract on its behalf, it is in no position to contend that such president was without authority to make representations of fact for the purpose of inducing the execution of the contract.

It appears that the authorities are divided on the question of whether an action to recover damages for deceit can be maintained against a principal for fraudulent representations of an agent, which induced the entering into of the contract, where the contract contains a clause negativing the existence of any representations not incorporated in the contract. Anno. 127 A. L. R. 132, 143 *et seq.* In a recent case the Iowa supreme court held that such an action could be maintained against the principal. *Hall v. Crow* (1948), 240 Iowa, 81, 34 N. W. (2d) 195. We, however, find it unnecessary here to pass upon the issue of whether an honest principal by proper contract provision cannot protect himself from liability to respond in damages in an action at law for fraud grounded upon the unauthorized fraudulent representations of his agent.

Having concluded that the contract clause in the instant case does not bar plaintiffs' action, we turn to the next question presented, viz., whether there is any finding by the jury of a fraudulent representation of fact made by Spector in behalf of the defendant which is supported by the evidence and upon which liability can be based. No liability can be grounded upon the representation, that the siding would not rust, crack, chip, or peel, because of the jury's finding that the plaintiffs ought not to have relied thereon. Of the remaining two representations, we conclude that there is no credible evidence to support the jury's finding that the representation, that the Perma-loy siding had been tested under all climatic conditions of this area and that the paint on the siding was not affected by snow, ice, or salt water, is false. We find it unnecessary to review the evidence on this point

because of the conclusion which we reach with respect to the remaining representation.

Such remaining representation is that Spector stated to plaintiffs in substance "that he and his company guaranteed the siding against chipping, cracking, rusting, or peeling for at least thirty years." There is ample credible evidence to support the jury's finding that such representation was made by Spector, but defendant contends that the same constitutes merely an unfulfilled promise as to future events and, therefore, no liability can be grounded thereon.

This court stated in *Beers v. Atlas Assurance Co.* (1934), 215 Wis. 165, 171, 253 N. W. 584:

"The principal contention made here by the plaintiff is that he has sustained damages in reliance upon the promissory misrepresentations made by the defendants. It is a well-established rule of law that fraud must relate to a present or pre-existing fact, and it cannot ordinarily be predicated on unfulfilled promises or statements made as to future events. *Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992; *First Nat. Bank v. Hizer,* 189 Wis. 359, 207 N. W. 688. See also authorities cited in 51 A. L. R. 49, note 7; 3 Callaghan's Wis. Dig., Action for Fraud, p. 2557, sec. 10."

Mr. Justice FAIRCHILD in a concurring opinion in *Beers v. Atlas Assurance Co., supra,* voiced the view that a representation in the nature of a promise to perform some act in the future could support an action for deceit, if the person who made the promise had no intention to perform the same at the time he made it. Later this court in *Alropa Corp. v. Flatley* (1938), 226 Wis. 561, 565, 277 N. W. 108, adopted the position contended for by Mr. Justice FAIRCHILD in such concurring opinion, thereby recognizing the same as an exception to the general rule, that an unfulfilled promise to perform a future act cannot be the basis of an action for deceit, and declared:

"To amount to a fraud upon the purchaser the representations must relate to present or pre-existing facts, and it can-

not ordinarily be predicated on unfulfilled promises or statements made as to future events. *Beers v. Atlas Assurance Co.* (1934), 215 Wis. 165, 253 N. W. 584. One of the exceptions to this rule is that *when promises are made upon which the purchaser has a right to rely, and at the time of making them the promisor has a present intent not to perform them, the promises may amount to fraudulent representations and liability result."* (Emphasis supplied.)

For a citation of many cases from other jurisdictions, which hold that fraud may be predicated on promises made with an intention not to perform the same, see annotation entitled "Promises and statements as to future events as fraud," Anno. 125 A. L. R. 879, III.

At the trial Spector was asked the following question by defendant's counsel and gave the following answer thereto:

"*Q*. Mr. Anderson has testified to certain conversations that took place and his son-in-law and wife were also witnesses. Will you tell the jury what took place at the time of the sale? *A*. All I can say, I never guaranteed any material for thirty years, *I wouldn't be foolish enough to guarantee paint to last for thirty years."* (Italics supplied.)

In addition to the testimony of the plaintiffs and their son-in-law, that Spector had made the statement that his company did guarantee the siding for at least thirty years, another customer of defendant testified that Spector represented to her that the siding "had a lifetime guaranty." Spector's testimony that he "wouldn't be foolish enough to guarantee paint to last for thirty years" is open to no other interpretation than that there was no intention of performing the guaranty at the time Spector made such representation to the plaintiffs.

Furthermore, we believe a reasonable construction of the representation, that Spector and his company (the defendant) *"guaranteed the siding against chipping, cracking, rusting, or peeling for at least thirty years,"* to be that the defendant had a policy of so guaranteeing all Perma-loy

siding installed on buildings of its customers for thirty years. In other words, the representation had reference to the existence of a general business policy of defendant rather than to a promise which was restricted to the siding to be installed on plaintiffs' home, if plaintiffs would sign the contract Spector was urging upon them. As so construed, the representation is one of existing fact, and not a promise to do something in the future.

We conclude that, whether construed as an unfulfilled promise, which when made defendant had no intention of performing, or as a statement of an existing general business policy, the representation as to the guaranty is sufficient upon which to ground plaintiffs' cause of action for fraud and deceit.

This brings us to the last question to be considered, which is whether error was committed by the trial court in submitting the issue of damages to the jury which requires that a new trial be had on such issue.

The courts of this country are divided as to the proper rule of damages to be applied in actions for fraudulent representations inducing a contract. Anno. 124 A. L. R. 37. The majority of jurisdictions have adopted the "benefit-of-bargain" rule under which the measure of damages is the difference between the value of the property as it was when purchased and what it would have been if it had been as represented. A substantial minority apply the "out-of-pocket" rule under which the measure of damages is the difference between the price paid for the property and its value as it was when purchased. Wisconsin is committed to the majority, or "benefit-of-bargain," rule. *Kimball v. Antigo Bldg. Supply Co.* (1952), 261 Wis. 619, 621, 53 N. W. (2d) 701; *Meske v. Wenzel* (1945), 247 Wis. 598, 603, 20 N. W. (2d) 654; *Mueller v. Michels* (1924), 184 Wis. 324, 343, 197 N. W. 201, 199 N. W. 380; and *Ohrmundt v. Spiegelhoff* (1921), 175 Wis. 214, 218, 184 N. W. 692.

However, even under the "benefit-of-bargain" rule of damages, the price paid by the purchaser is relevant evidence on the issue of the value of the property if it had been as represented. 37 C. J. S., Fraud, p. 478, sec. 143b (2), and 4 Sutherland, Damages (4th ed.), p. 4410, sec. 1172.

It is apparent from a reading of the two questions which the trial court included in the special verdict as to damages that the court at time of submission had the "out-of-pocket" rule of damages in mind rather than the "benefit-of-bargain" rule. After the verdict, the trial court realized that an error had been committed in submitting the issue of damages and properly ordered that a new trial be had on such issue.

We would suggest that the two questions to be submitted to the jury at the new trial be worded substantially as follows:

1. What would have been the value of the siding as originally installed on the Andersons' home if it had been guaranteed by the defendant company for at least thirty years against chipping, cracking, rusting, or peeling?

2. What was the actual value of such siding at the time it was originally installed without any such guaranty?

*By the Court.*—Order affirmed.

The following opinion was filed on March 8, 1955:

Currie, J. (*on motion for rehearing*). Counsel for defendant, in his brief in support of the motion for rehearing, urges that upon the verdict of the jury it was impossible for defendant's president, Spector, to have possessed the intent that defendant corporation would not perform the representation as to the guaranty at the time Spector made such representation. Such conclusion is based upon the fact that the jury returned an answer of "No" to the question of the special verdict which inquired as to whether such representation was false, but answered "Yes" to the question of the ver-

dict which asked whether Spector should have known such representation was false.

Such brief also contains this admission: "We grant that Mr. Spector was for all intents and purposes the [defendant] corporation. His wife and father are officers for corporate purposes." This being so, there is no question but that Spector knew at the time of making the representation as to the guaranty that it was false, whether it be construed as a promise to be performed in the future or as a representation of existing corporate policy. The evidence as to his knowledge of its falsity, if the representation be construed as a promise to do something in the future, is reviewed in our former opinion, and it would serve no useful purpose to repeat it here. The foregoing admission as to the corporation being practically the *alter ego* of Spector establishes that he must have known that the corporation had no existing business policy of making such a guaranty in connection with its sales and installations of siding. There was, therefore, no credible evidence to support the jury's answer of "No" to the question inquiring as to whether Spector knew such representation to be false at the time he made it. The jury should have answered such question "Yes," as well as the succeeding question inquiring as to whether Spector should have known such representation to be false, which latter question it did answer "Yes."

We do not consider that there was an inconsistency in the verdict which requires a new trial on the issue of fraud. This is because the answer of "Yes" to the question, which inquired whether Spector should have known such representation to be false, together with the other answers to questions in the verdict, is sufficient to substantiate a judgment for plaintiffs exclusive of the damage issue.

*By the Court.*—Motion for rehearing denied without costs.