BADGER BEARING COMPANY, a
Wisconsin Corporation, Plaintiff,

v.

BURROUGHS CORPORATION, a
Foreign Corporation, Defendant.

No. 74–C–552.

United States District Court,
E. D. Wisconsin.

Nov. 21, 1977.

Gibbs, Roper, Loots & Williams by Clay R. Williams, Milwaukee, Wis., for defendant.

Edward P. Rudolph, Milwaukee, Wis., for plaintiff.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a diversity action in which the plaintiff, Badger Bearing Company (Badger), seeks damages from the Burroughs Corporation (Burroughs) in connection with the sale of a computer system manufactured by the defendant. The case was tried to the court. At the close of the case, the defendant moved for a directed verdict. I reserved ruling on the motion and invited the parties to submit briefs on the merits. In this decision and order, the defendant's motion will be consolidated with the merits for disposition in a single ruling. Having reviewed the evidence adduced at trial and the briefs filed by the parties, the following shall constitute my findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

The plaintiff is a Wisconsin corporation engaged in the business of distributing bearings and power transmission components. The defendant is a Michigan corporation engaged in the designing, manufacturing, selling, and installing of business machines and systems.

Prior to Badger's obtaining the Burroughs equipment in question, Badger accounted for its large inventory of 15,000 different parts by a reliable but time-consuming manual system. Badger became dissatisfied with this manual system because it did not produce information in a fashion which permitted management decisions to be made.

Between September 1, 1967, and October 1, 1967, Burroughs made an analysis and evaluation of Badger's data processing needs. Burroughs personnel viewed Badger's operations and interviewed Badger's officers concerning management objectives. The Burroughs salesman met with Charles Roamer, Badger's president, and described the attributes of the new Burroughs E6000 computer system with the use of a brochure. Mr. Roamer was advised that the E6000 would have the capacity to meet Badger's existing and future data processing needs. The E6000 system ultimately acquired by Badger was the first such system sold by Burroughs.

Burroughs sales representatives prepared a written proposal in a letter dated November 2, 1967, directed to Mr. Roamer. The proposal provided, in pertinent part:

"We are pleased to submit for your consideration our proposal for the mechanization of your Accounting Department.

"We recommend that you install a Burroughs E6000 Computer. This machine will be used on the applications we discussed a few days ago in our bound portfolio. These are:

"1. Billing with Automatic Up-Dating of Accounts Receivable. Sales by 19 major categories are accumulated as an automatic by-product of this operation.

"2. Inventory Up-Dating. Inventory ledgers are updated automatically through the use of punch cards which were produced as a by-product of billing. A *Critical Stock Status Listing* is produced on the line printer on items that are in a *minus available status.* Sales, cost and Gross Profit by salesman by major product category are accumulated as a by-product of updating inventory

*PERIODIC MANAGEMENT REPORTS*

"3. Inventory Stock Status Report

"4. Inventory Non-Activity List

"5. Inventory Listing by product

"6. Inventory Listing by Mfg. by Product

"7. Customer Analysis by Salesman by Dollars by Product Bought

"8. Monthly Age Analysis by Customer

"After reviewing your present system and requirements for a proposed system, we are confident that the installation of a Burroughs E6000 Computer will afford you:

"MORE WORK, IN LESS TIME AND MORE MEANINGFUL MANAGEMENT INFORMATION THAN EVER BEFORE POSSIBLE.

.    .    .    .    .

"This recommendation of Burroughs products and/or services is submitted for your consideration and guidance in the hope that we may be favored with your order, subject to acceptance thereof by the Burroughs Corporation. Prices quoted are subject to change without notice to prices in effect at the time a firm order is placed."

On November 14, 1967, Mr. Roamer signed a Burroughs equipment sales contract for the purchase of an E6000 computer and accompanying software at a price of $62,590 less a trade-in allowance for another piece of equipment. On the face of the contract it is stated that a 3 month warranty would apply as described on the reverse side of the contract. It is also stated that the terms on the reverse side of the contract are part of the agreement. On the reverse side of the contract, the following limitation of remedy clause appears:

"Seller . . . shall not be held responsible . . . in any event under this agreement for more than a refund of the purchase price, less reasonable rental for past use, upon return of the equipment to Seller with Seller's prior written consent. (Purchaser hereby expressly waives all incidental and consequential damages.)"

Immediately below the above clause, the following clause appears in bold-face type:

"There are no understandings, agreements, representations, or warranties, express or implied (including any regarding merchantability or fitness for a particular purpose), not specified herein, respecting this contract or the equipment hereunder. This contract states the entire obligation of seller in connection with this transaction."

Mr. Roamer testified that he read the contract's language prior to signing the contract. Although Badger's execution of the contract was witnessed by a Burroughs representative, Burroughs never signed on the appropriate line for acceptance of the contract.

Thereafter, Badger determined that it was financially unable to meet Burroughs' cash sale terms and sought instead to arrange a lease of the computer and accompanying software. After an unsuccessful attempt to arrange a lease with one company, a lease was arranged with First National Leasing Co. First National purchased the equipment from Burroughs on June 28, 1968, on First National's own purchase order form, upon which the following typewritten language appears:

"Burroughs Acceptance of this order is conditioned upon agreement by the buyer to the standard terms and conditions of Burroughs standard order form for sale of its equipment. Buyer has signified acceptance of this condition through initialling by an authorized representative, in margin hereof. Burroughs standard terms and conditions of sale shall prevail."

The initials of a representative of First National appear next to the above language.

The lease between Badger and First National was duly executed on October 30, 1968. Paragraph 4 of the terms and conditions of the lease provides, in part:

"Lessor makes no warranties either expressed or implied as to any matter whatsoever including without limitation the condition of the equipment or its fitness

for any particular purpose, but lessee shall have the benefit of manufacturer's warranties, if any."

The E6000 system was installed in late 1968. The system experienced mechanical breakdowns of varying severity on the average of one per week, requiring Burroughs personnel to make 76 service calls between November 5, 1968, and July 9, 1971. The mechanical problems often delayed billings and occasionally required Badger personnel to work overtime. The Burroughs salesman and programmer made frequent visits to attempt to solve these problems.

In November, 1969, the same Burroughs salesman who recommended the E6000 system to Badger recommended that additional equipment, at a cost of $16,830, be installed to save two hours a day of the E6000 system's machine time. In July, 1970, the plaintiff replaced one of the system's units with a new piece of Burroughs equipment and acquired a new Burroughs card punch unit.

On August 13, 1970, Mr. Roamer wrote Burroughs to inform it of Badger's dissatisfaction with the E6000 and to request Burroughs' view as to how the system could be removed. Mr. Roamer indicated that Badger's profits could not sustain the existing data processing system.

In November, 1970, the plaintiff retained a systems analyst, Computer Methods, Inc., to evaluate the E6000 system and to determine if it was performing in conformity with the Burroughs proposal. Mr. Templeton, president of Computer Methods, Inc., found that applications 1, 2, 3 and 7 were being produced adequately; that applications 4, 5, 6 and 8 were not being produced at all; and that 4 additional applications unmentioned in the proposal were being run and occupying 17% of the system's time. It also concluded that "the phrase 'more work, in less time and more meaningful management information than ever before possible' seems to be incorrect" and that the E6000 could not meet the objectives of management. A recommendation was made that Badger dispose of the E6000 system and that Badger retain Computer Methods, Inc. to design a new system.

Badger then discontinued use of the E6000 system, placed it in storage, and retained Computer Methods, Inc. for a fee, to design a new system. This action was commenced in October, 1974.

Badger claims that the defendant has been proved liable for breach of express and implied warranties and for misrepresentation. In my opinion, Badger has failed to establish liability on either theory.

## THE EXPRESS AND IMPLIED WARRANTY THEORIES

I find it unnecessary to determine whether Burroughs violated any express or implied warranty because I believe that Burroughs effectively disclaimed all warranties other than the limited three month warranty contained in the equipment sales contract.

■ Badger does not dispute that the disclaimer, if enforced, is sufficiently broad to negate the alleged representations. The disclaimer is in bold-face contrasting type so as to be conspicuous as required by Wis. Stat. § 401.201(10). It is the plaintiff's position that the equipment sales contract of November 14, 1967, never became a binding agreement due to Burroughs' failure to sign the contract. It is therefore argued that no contract ever existed between the parties and, as a result, that Burroughs cannot rely upon the disclaimer language of the contract.

Although the contract was not the final expression of the parties' agreement, I do not believe that the contract is irrelevant, especially in view of the parties' failure to embody their agreement in any one writing.

Wis.Stat. § 402.204 provides:

"(1) A contract for sale of goods may be made in any manner sufficient to show agreement, *including conduct by both parties which recognizes the existence of such a contract.*

"(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." [emphasis added].

In the case at bar, the equipment sales contract became the foundation for a broader agreement whereby Burroughs agreed to sell certain data processing equipment to First National and Badger agreed to arrange a lease agreement with First National. It is clear that the equipment was sold to First National exclusively for the purpose of consummating the transaction with Badger. The Badger-Burroughs agreement was hardly a model transaction, but the conduct of the parties as a whole is sufficient to show an enforceable agreement.

Mr. Roamer's execution of the Burroughs equipment sales contract, after having read its terms and conditions, is conduct which prima facie shows agreement to such terms, including the limited three month warranty and disclaimer of all other express and implied warranties. Although Burroughs never signed the equipment sales contract, it confirmed its general assent to its terms by incorporating them into the later agreement with First National.

During the trial, I denied the defendant's motion to exclude certain of the plaintiff's exhibits offered to show that Burroughs made certain warranties during the negotiations prior to the sale of the Burroughs system. The basis for denying the defendant's motion was my finding that the equipment sales contract was not shown to have been intended by the parties as a final expression of their agreement. Accordingly, I permitted the plaintiff to introduce evidence to contradict the terms of the equipment sales contract. Wis.Stat. § 402.-202. However, the plaintiff did not introduce any evidence to show that the disclaimer language, to which Mr. Roamer had earlier expressed his assent, was "negotiated out" of the agreement between the parties. I therefore find that Burroughs effectively disclaimed all express and implied warranties.

Badger next argues that if the court finds the disclaimer to be effective, it should be found unconscionable and not enforced. This claim was not pleaded and appears for the first time in Badger's briefs on the merits. When a party claims that a contract or clause is unconscionable, Wis. Stat. § 402.302 requires that the parties be afforded a reasonable opportunity to present evidence as to the commercial setting, purpose and effect of the allegedly unconscionable clause to aid the court in its determination. Badger's failure to raise this issue prior to this time forecloses such an evidentiary inquiry. From the evidence produced, however, I am not persuaded that the disclaimer clause is unconscionable. Although the plaintiff was less knowledgeable concerning computers than the defendant, as a business man he must be deemed to possess some commercial sophistication and familiarity with disclaimers. I therefore find the plaintiff's unconscionability defense to be without merit.

## THE MISREPRESENTATION THEORIES

In the second branch of its case, Badger argues that it has proved the defendant liable under a theory of negligent misrepresentation or strict responsibility for misrepresentation. In portions of its brief, Badger also adverts to a fraud theory. The various theories of recovery for misrepresentation were discussed in *Whipp v. Iverson,* 43 Wis.2d 166, 169–170, 168 N.W.2d 201 (1969). Since these misrepresentation theories are grounded in tort, the contractual defenses of disclaimer, notice, and privity are unavailable to the defendant. *Anderson v. Tri-State Home Improvement Co.,* 268 Wis. 455, 459, 67 N.W.2d 853 (1955). However, the plaintiff must prove its case by clear, satisfactory and convincing evidence. *Morgan v. Inter-Continental Trading Corp.,* 232 F.Supp. 444, 450 (E.D.Wis. 1964), aff'd 360 F.2d 853 (7th Cir. 1966); *Kuehn v. Kuehn,* 11 Wis.2d 15, 104 N.W.2d 138 (1960); *Tait v. Pixley,* 253 Wis.2d 483, 34 N.W.2d 775 (1948); Wisconsin Jury In-

structions, Civil-§ 2402 (comment) and § 205.

■ Badger argues that the statements in the proposal, the E6000 brochure, and certain oral representations made by Burroughs personnel during the negotiation for the sale of the E6000 system constitute actionable misrepresentations. Badger relies primarily on the statements appearing in the Burroughs proposal. The central representation in the proposal is that the E6000 system would afford Badger "more work, in less time and more meaningful management information than ever before possible."

Prior to Badger's installation of the E6000 system, virtually no management information was generated by existing accounting procedures. Inventory amounts were simply posted to cards without meaningful categorization. This deficiency was the reason why Badger turned to an advanced data processing system.

With the installation of the E6000 computer, Badger obtained a considerable amount of information as to sales, accounts receivable and payable, and inventory. None of this information had been produced previously under the manual accounting system. Although the system had frequent mechanical problems, they were not always so severe as to render the entire system inoperative. Furthermore, the overtime hours worked by Badger employees were not attributable solely to machine breakdowns. Burroughs' programmer established that some of the overtime experienced by Badger was anticipated in the design of the E6000 system for Badger. The nature of Badger's inventory procedures required that the inventory ledger cards be available during the day in the hands of employees. Thus, much of the inventory reporting could only be done on weekends.

The E6000 enabled Badger to complete its entire payroll process, including the necessary governmental reports, in two hours per week. The accounts receivable records were produced as an automatic by-product of the other applications run by the E6000

system, relieving Badger's employees from performing this function. Furthermore, Mr. Roamer, Mr. Perretz, the company's accountant, and Mr. Templeton of Computer Methods, Inc., conceded that most of the applications were produced satisfactorily. The foregoing clearly demonstrates that the E6000 system accomplished more work in far less time than possible under Badger's manual system. I therefore believe that the representation that the E6000 "would perform more work in less time with more meaningful management information than ever before possible" was not false and cannot be a basis for liability.

The plaintiff also argues that the Burroughs proposal falsely represented that four of the applications described in the proposal would be performed by the E6000 system. The evidence showed that these four applications were available for use but were never made operational.

The plaintiff failed to establish why these four applications never became operational. It was never shown that the system was incapable of performing these applications. Although it is possible that the E6000 system was incapable of performing all of the applications described in the proposal simultaneously, it is also possible that the machine time allotted for the four non-operational applications was used for the applications performed by the system but not described in the proposal. It is also significant that Badger never registered any specific objection to the fact that these applications were not being run. This apparent acquiescence, when considered with the addition of new applications to the system is material in evaluating the extent of Badger's dissatisfaction. I am unable to find that Burroughs falsely represented that the E6000 system would accomplish the four applications described in the proposal.

It is also claimed that the E6000 brochure contained actionable misrepresentations. However, at trial the plaintiff did not precisely establish which of the many statements in the brochure were relied upon in its decision to acquire the E6000 system. In its brief on the merits, Badger singles out

certain phrases from the lengthy brochure and claims that Mr. Roamer relied upon them in deciding to acquire the E6000 system. However, Badger did not introduce any persuasive evidence which clearly or convincingly demonstrated that any particular phrase was relied upon by Mr. Roamer in the decision to acquire the E6000 system.

■ Finally, Badger contends that the Burroughs salesman orally misrepresented that the E6000 system would meet Badger's existing *and future* data processing needs. As it relates to "future data processing needs," this statement, in my judgment, is not one of fact but rather a promise of future performance for which there can be no tort liability unless it is shown that the speaker had no intent to perform. *Morgan,* supra, at 451. Mr. Roamer testified on cross examination that he did not believe the defendant's employees made any intentional misrepresentation. This concession disposes of any claim that Burroughs had a present intent not to perform when it represented that the E6000 would be able to meet Badger's future data processing needs. Moreover, the addition of the applications not described in the proposal demonstrates to some extent that the system did meet Badger's needs as they developed.

■ Although the plaintiff's brief raises a claim for intentional fraud, the portion of Mr. Roamer's testimony referred to above precludes recovery on that theory.

## CONCLUSION

Based on the foregoing, I believe that the plaintiff has failed to prove a right to recovery either for breach of warranty or for misrepresentation.

Therefore, IT IS ORDERED that the plaintiff take nothing, and

IT IS ALSO ORDERED that this action be and hereby is dismissed on its merits.