[Civ. No. 6236. First Appellate District, Division One.—September 29, 1928.]

WILLIAM C. CRITTENDEN, Appellant, v. CREDIT FONCIER DES ETATS UNIS (a Corporation), Respondent.

Joseph J. Webb and Wm. A. Nunlist for Appellant.

Chickering & Gregory for Respondent.

BEAUMONT, J., *pro tem.*—In the early part of 1912 certain persons in Paris, France, and San Francisco, decided to form a corporation, the chief object of which was to borrow money in Europe and lend it in America. At that time the interest rate in France was approximately two per cent lower than in the United States. Henry Brunner, who lived in Paris, but who had formerly been a resident of San Francisco, was mainly responsible for the plan. He interested Tilden C. Tognazzini, of San Francisco, in the formation of the corporation. William C. Crittenden (appellant herein), a practicing attorney in San Francisco, heard of the proposed enterprise, came to Tognazzini and requested participation therein. After some discussion, it was agreed that Crittenden should become one of ten incorporators to be selected from San Francisco. Appellant agreed to purchase 400 shares of the capital stock, and later subscribed therefor, paying $9,643.20. The corporation was organized in Paris in November, 1912, with Brunner and Tognazzini as members of the board of directors. The name of this corporation was Credit Foncier des Etats Unis. Just prior to the formation of that corporation, the organizers thereof had caused to be formed in Delaware, U. S. A., a corporation by the name of Credit Foncier of the United States, Incorporated. The latter corporation was

an auxiliary of the former. Some years after the beginning of this action it was dissolved. The French corporation issued Crittenden a stock certificate, in accordance with his subscription agreement. In April, 1914, Crittenden served on the French corporation (Credit Foncier des Etats Unis) a notice of rescission. Shortly thereafter, this action seeking to rescind the contract of purchase of the stock was instituted. Defendant had judgment and from this plaintiff has appealed.

Many specifications "wherein the evidence is alleged to be insufficient to justify the decision" were made by appellant, but in his brief he concisely states the contention on which he relies. It is as follows: "That the consideration inducing him to purchase said stock was the promise on the part of the promoters of the defendant, the 'Paris Corporation,' and the promise of the defendant itself, the 'Paris Corporation,' as shown by its by-laws, to loan money in America and particularly in California; that the defendant, the 'Paris Corporation,' failed to loan any money in America or in California in violation of its agreement; that the consideration having failed, the plaintiff and appellant was entitled to rescind the purchase of the said stock and recover the money paid therefor." First, let us examine the record as to the promise so claimed to be shown by the by-laws. It is not shown in the by-laws that the corporation is to loan money in California. The by-laws read: "The principal purpose of this corporation is to carry on in America, and especially in the United States of America, either alone, or in association with other concerns or individuals, or as agent for the account of the third parties, a general business of making loans on mortgages or mortgage securities."

Appellant alleges in his third amended complaint that promoters of respondent promised and represented to him that they were engaged in organizing in Paris, France, "a corporation having for its principal purpose the carrying on in America and especially in the United States of America, but more particularly in what is known as the 'Pacific Coast Territory,' a general business of making loans of money on mortgages and mortgage securities," and that "when said corporation was organized the said corporation would perform each of said acts as its sole business." The court

found adversely to these allegations. There is no evidence in the record that Tognazzini made any representation that this was to be the sole business of the corporation. That he represented to appellant that the corporation purposed lending money, not only generally in the United States, but particularly in the Pacific Coast territory, is apparent from the evidence. The numerous exhibits in the record establish this clearly.

We now consider the point of appellant's contention "that the defendant failed to loan any money in America or California *in violation of its agreement."* Respondent did not lend any money in the United States, and the court so found, but was this in violation of any agreement? Tilden C. Tognazzini, sworn as a witness on behalf of plaintiff, testified on cross-examination: "I believe Mr. Crittenden came to me and asked to join this group, at the solicitation of Mr. Bardman, I think he told me at that time. I remember telling Mr. Crittenden that I did not think he should join, being an attorney, and having already one attorney as one of the group. . . . I don't remember just exactly what took place, but my impression is that I rather discouraged Mr. Crittenden, on that theory. . . . As to what was said, we had a great many talks in those days; we used to meet daily I think and I perhaps told him exactly what I told the rest —what I expected this corporation would do under certain conditions then existing, which was the only logical thing I could have told him, of course." As to the conditions existing about the time these conversations were had relative to forming the corporation (prior to August, 1912), the record shows definitely that the rate of interest in France and Europe generally was about two per cent per annum lower than in the United States. This motivated the organization of the corporation. The organizers planned to borrow money at the lower rate then current in Europe and loan it at the higher rate in the United States. The evidence shows that wars in the Balkan states unsettled the financial condition of Europe in 1913. The witness Tognazzini was asked why the corporation did not invest any money in the United States. He answered: "At the time this organization was formed, and which was again the motive for organizing the company, it was on account of money being much cheaper in France than it was here. I would say that within a

year conditions changed materially in Europe, that is, a year from the date of the organization. If I recollect correctly, I think the Balkan war started about that time in 1914. It raised rates in France, of course, a great deal. I do not think the situation changed our financial condition in this country materially.'' The subscription agreement signed by appellant was unconditional. The condition that appellant contends should attach in order to show a violation of its terms, and a consequent failure of consideration, rests in parol. This testimony shows that the representations relied upon were based on the continuance of the existing conditions. These conditions were nonexistent at the time appellant gave notice of rescission and when he began this action.

Statements to the effect that the ''corporation when organized would invest its funds largely in the securities offered in the Pacific Coast Territory,'' made under the circumstances shown by the evidence in this case, were merely expressions of opinion. (*Jefferson* v. *Hewitt,* 95 Cal. 535 [30 Pac. 772].) On cross-examination appellant stated that he and Mr. Tognazzini ''discussed what in effect this corporation was going to do after its organization. I don't remember him using the word 'promise.' He never used the word 'intend' or 'intended.' He simply, as far as I remember, stated that the corporation was going to do this, such and such.'' The findings of the court show that the statements were made without any fraudulent purpose. Appellant testified that Mr. Tognazzini, who was the only person who made any statements to him concerning the proposed corporation, acted in good faith.

There is a finding of the court that directly negatives failure of consideration. In appellant's complaint it is alleged that the ''said corporation has, without cause, abandoned or is about to abandon, the sole object and purposes thereof and now intends to liquidate its affairs.'' In another part of the complaint it is alleged that the capital stock of the corporation is 40,000 shares; ''that the entire amount has been issued and is now outstanding; that of this total sum four hundred shares only were issued to this plaintiff; that a majority of the stock has been issued to and is now held by persons who, at all times referred to herein, have been and now are in active control of the said

'Paris Corporation.' " Upon the questions of abandonment and liquidation, the court found adversely to plaintiff's allegations. ■ Whether there is an "abandonment" of the purposes and objects of a corporation, is generally a question of fact. There is no fixed standard by which it is to be determined. (2 Fletcher's Cyc. Corporations, sec. 654, and cases cited; *Gibson* v. *Columbia & New Richmond Turnpike Co.*, 18 Ohio St. 396; *Milwaukee Smelting & Ref. Co.* v. *Lindenberger*, 142 Wis. 273 [124 N. W. 273].) As heretofore mentioned, the court found that to lend money in the United States was not the sole purpose of respondent. It was the principal purpose, it is true, but that does not conclude it from having other purposes. On the other hand, it implies there may be other purposes. There is no evidence in the record that the corporation was not, at the time of the commencement of this action, engaged in the active business of some, or at least one, of its purposes. Indeed, appellant's allegation regarding the large number of shares outstanding and the active control of the corporation by the board of directors so indicates. ■ The complaint alleged that respondent had failed and refused to make any loans whatsoever. The court found it had not so failed or refused. Appellant cannot now complain of this finding, having placed the issue before the court and there being no evidence offered or received thereon. (*Monterey County* v. *Cushing*, 83 Cal. 507 [23 Pac. 700].) In the present case there was no testimony that the corporation intended to liquidate its affairs. ■ We cannot say that the circumstances, as shown by the evidence and especially by the testimony of the witness Tognazzini, were not sufficient to justify the court in its finding upon the question of abandonment.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.