SOUTHARD, Respondent, v. OCCIDENTAL LIFE INSURANCE
COMPANY OF CALIFORNIA, Appellant.

*October 31—November 28, 1967.*

710

For the appellant there was a brief by *Chambers, Nash, Pierce & Podvin* of Wisconsin Rapids, and oral argument by *Lloyd L. Chambers* and *Francis J. Podvin.*

For the respondent there was a brief by *Hosek, Zappen, Meissner & Oestreicher* of Marshfield, and oral argument by *Carl L. Meissner.*

WILKIE, J. The sole issue on this appeal is whether the trial court erred in granting the plaintiff's motion for a directed verdict. Or to put it another way, contrary to the trial court's ruling was there credible evidence to support a jury finding that the applicant was suffering

from a serious illness during the two-year period preceding the date of his application? [5]

More specifically the question is whether the trial produced evidence which differed from the evidentiary facts presented in the affidavits before us in the first *Southard* case in which we ruled that, as a matter of law, Robert was not suffering from a serious illness at any time during the two-year period next preceding his application.

After examining the testimony at the trial here we are satisfied that the evidence which bore upon the condition of the deceased did not vary in any significant manner from the allegations contained in the summary judgment affidavits.

The death certificate admitted into evidence during the trial listed the immediate cause of death as "Pul. Atelectasis & Pneumonia." Other significant conditions contributing to Robert's death, but not related to the terminal disease, were described as "Quadriplegia" and "Septicemia." This death certificate was before the court in the first case.

Dr. Donald R. Griffith, a specialist in internal medicine, testified that he made four or five housecalls at Robert Southard's home during the two-year period which preceded Robert's application for life insurance. The doctor testified that a swimming accident had left Robert partly paralyzed; Robert had no control of his bladder; a permanent cystotomy tube was inserted into his body; and there was occasional bleeding around the tube. None of this evidence is new.

Although Dr. Griffith could not recall whether or not he had treated Robert for any respiratory problems, he did testify that Robert's condition affected the muscles which enable the chest to expand and to that limited extent impaired his breathing. This evidence is not

[5] *Milwaukee v. Bichel* (1967), 35 Wis. 2d 66, 68, 150 N. W. 2d 419.

new. It shows only details associated with Robert's quadriplegic condition. The doctor also stated that Robert had an occasional urinary infection and that this was called a chronic condition. This condition, and the fact of the associated urinary infection, were before the court in the former proceeding.

We conclude that the evidence on the trial was essentially the same as that before this court in the summary judgment proceeding so that our holding then that Southard was not suffering from a serious illness during the period next preceding the application is controlling.

True, Dr. Griffith testified that Robert's condition was a serious illness. But the answer called for by the question in the application was a layman's answer. The insurance company, soliciting the application by mail could not expect the applicant to give a doctor's expert medical opinion. As we said in the first case, "The inquiry in the application called for a layman's answer, not a medical opinion." [6] In answering the first question affirmatively we think it obvious that the jury was heavily influenced by the doctor's expert testimony. His opinion was based on the very afflictions which, in the first appeal, this court held not to constitute a serious illness but a condition.

Since Dr. Griffith merely testified as to certain detailed difficulties associated with Robert's breathing and the permanent installation of the cystotomy tube we conclude that there is no additional evidence on the applicant's afflictions which would enable the trial court on trial to reach any other conclusion but that reached on the first appeal. Dr. Griffith's contrary medical opinion was inadmissible. The trial court was entirely correct in directing a verdict.

Because of our position on this issue it is not necessary to consider any other matters raised on this appeal.

*By the Court.*—Judgment affirmed.

---

[6] *Southard, supra,* footnote 1, at page 357.