Gerald W. GUYER, Harry Dowodzenka, and Lauren R. Karnes, Plaintiffs,

v.

CITIES SERVICE OIL COMPANY, a Delaware Corporation, Defendant.

Civ. A. No. 74–C–252.

United States District Court, E. D. Wisconsin.

Nov. 28, 1977.

· Daniel W. Hildebrand, Madison, Wis., for plaintiffs.

Donald Heaney, Madison, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for damages and injunctive relief arising out of the termination of contracts entered into between the plaintiffs and the defendant. The matter is before the Court on defendant's motion for summary judgment, which motion will be granted for the reasons hereafter stated.

The plaintiffs in this action, Gerald W. Guyer, Harry Dowodzenka, and Lauren Karnes, are former operators and lessees of Cities Service Oil Company gasoline service stations located in Milwaukee. Each of them held his lease under a year-to-year automatically renewable contract which was terminable by either party upon ninety days' notice. Mr. Guyer began operation of his station in 1963. His last lease was signed on February 2, 1973, was automatically renewed the next year, and was terminated by letter dated February 28, 1975. Mr. Guyer received notice of nonrenewal on October 17, 1974. Mr. Dowodzenka began operation of his station in 1965. His last lease was signed on December 21, 1973, and terminated on December 31, 1974. Mr. Dowodzenka received notice of nonrenewal by letter dated September 24, 1974. Mr. Karnes began operation of his station on September 1, 1972. His last lease was signed on September 17, 1973, and terminated on September 30, 1974. Mr. Karnes received notice of nonrenewal by letter dated June 3, 1974.

The plaintiffs charge, and the Court accepts for purposes of this summary judgment motion, that beginning in 1971, the defendant Cities Service Oil Company began a re-evaluation of its investments in the Milwaukee area and thereafter decided to terminate all but eighteen to twenty-five of its gasoline station leases. The Milwaukee market strategy recommendations were reduced to writing in a study dated January 1973, and Case VI thereof, which called for the elimination of each of the plaintiff's stations, was adopted as company policy in April or May of 1973. Pursuant to this policy each of the plaintiffs was thereafter presented with and signed a rider to his lease which provided that in the event the defendant sold the station before the term of the lease, the lease would be terminable upon thirty days' notice.

The plaintiffs further contend, and the Court accepts for purposes of this motion, that they were never informed of defendant's new marketing strategy but rather were told that their stations were priced so high that it was unlikely they would be sold, and were further induced to believe that if they maintained good performance

records, their leases would be automatically renewed for an indefinite period. Defendant, on the contrary, claims that in April or May of 1973 when it adopted the new marketing strategy, it informed those dealers whose leases were to be terminated of the impending termination.

Plaintiffs claim that the alleged failure of the defendant to inform the plaintiffs of its marketing strategy constitutes a fraudulent concealment which induced them to renew their leases to their damage in the amount of $75,000.00 each,* and, further, that the defendant made actual misrepresentations to the plaintiffs, to their injury. Specifically, plaintiffs charge in their amended complaint as follows:

"15. When Plaintiffs entered into the leases and agreements with Cities Service, they understood and relied upon the fact, and were led to believe, that they would have a lengthy period of time to operate the gasoline service stations and that Defendants did not customarily terminate service station leases; * * *.
* * * While operating their businesses under the terms of the leases, representatives of the Defendant continually encouraged and induced Plaintiffs to participate in promotional programs organized by Defendant to sell products of Defendant and of other companies recommended by Defendant and to purchase various other items for use in Plaintiffs' service stations as well as for resale; and Plaintiffs were so induced and did make such purchases in reliance upon the recommendations and inducements of the Defendant. Plaintiffs were continually informed that their sales and performance was excellent and were accordingly led to believe that they were never in any danger of losing their stations for any reason whatsoever.

* * * * * *

"20. Because of the aforementioned fraudulent concealment of [the Milwaukee marketing strategy], and because Plaintiffs relied upon the representations and inducements of Defendant, Plaintiffs suffered injury and incurred damages as heretofore set forth."

Defendant has denied that it made any actual misrepresentations to the plaintiffs, has also denied that it had a duty to reveal to them its marketing strategy, and has moved for summary judgment. For the reasons hereinafter stated, defendant's motion will be granted.

■ There is no dispute that the leases themselves were year-to-year and terminable upon ninety days' notice by either party. Parol evidence is not admissible to vary the terms of a written agreement which is clear and unambiguous. *Conrad Milwaukee Corporation v. Wasilewski*, 30 Wis.2d 481, 141 N.W.2d 240 (1966). However, parol evidence may be admissible in support of a claim of fraudulent inducement to enter into a contract, as in such a case there is no attempt made to vary the terms of the contract itself. See the concurring opinion of Justice Fairchild in *Beers v. Atlas Assurance Company*, 215 Wis. 165, 253 N.W. 584 (1934), accepted by the majority of the Wisconsin Supreme Court in *Alropa Corporation v. Flatley*, 226 Wis. 561, 566, 277 N.W. 108, 110 (1938). Such inducements must, however, constitute promises made with a present intention not to perform, and must also be promises "upon which the purchaser has a right to rely." *Alropa, supra.* See also *Anderson v. Tri-State Home Improvement Co.*, 268 Wis. 455, 67 N.W.2d 853 (1955). Statements made which are merely unfulfilled promises or statements of future events cannot form the basis for a claim of actionable fraud. *Hartwig v. Bitters*, 29 Wis.2d 653, 656, 139 N.W.2d 644 (1966).

■ Furthermore, where the claim is one of fraudulent concealment rather than of actual misrepresentation, the plaintiff bears the burden of showing both that the defendant had a duty to disclose the information and that the plaintiff was justified in relying on the defendant to disclose. Mere silence, in the absence of a duty to disclose, does not constitute misrepresentation. *Kamuchey v. Trzesniewski*, 8 Wis.2d 94, 98 N.W.2d 403 (1959).

---

* Plaintiffs also seek punitive damages in the amount of $200,000.00.

The plaintiffs in this action have failed to establish that the defendant had a duty to disclose its Milwaukee marketing strategy to them, and the Court has determined that as a matter of law the defendant had no such duty. In *Kamuchey*, supra, the Court found no actionable fraud where the defendant, in selling to the plaintiff the stock, fixtures, lease, and good will of his restaurant, failed to inform the plaintiff that the lease carried with it the obligation to heat the entire building in which the restaurant was located. Similarly, in *Southard v. Occidental Life Insurance Company*, 31 Wis.2d 351, 154 N.W.2d 326 (1966), where the deceased insured failed to reveal his quadreplegic condition on a life insurance application but answered all questions which were put to him truthfully, there was no fraud despite the fact that deceased had been an insurance agent and therefore knew that his condition was material to the risk which the company was undertaking.

In this action as well, no doubt the defendant was aware that its marketing strategy would be material to a decision by the plaintiffs whether or not to enter into or renew their leases; nevertheless, materiality of the information to the plaintiffs' decision does not create a duty in the defendant to disclose it. The only case which plaintiffs cite in support of their position, *Laehn Coal and Wood Company v. Koehler*, 267 Wis. 297, 64 N.W.2d 823 (1954), is clearly distinguishable, as the Court there based its decision on the attorney-client relationship existing between the plaintiff and the defendant and its conclusion that an attorney should be held to the standard of the highest degree of good faith. There is no such confidential relationship here and no duty to disclose. Therefore, the claim of fraudulent concealment cannot succeed.

Plaintiffs also claim, albeit secondarily, that the defendant engaged in active misrepresentation when its agents allegedly informed plaintiffs that the prices set on their stations were so high that no purchasers would be found and therefore led them to believe that they would remain in their stations indefinitely. This claim, however, is in essence merely a reassertion of the fraudulent concealment claim and is again grounded on the failure to disclose the fact that pursuant to the marketing strategy the stations would be closed in any event. Plaintiffs also claim that they were led to believe that subject to good performance records their leases would be extended indefinitely. See paragraph 7 of the Guyer, Dowodzenka, and Karnes depositions signed and notarized on November 3, 1975, all of which state: "Based on the representations made by Mr. Hackbarth or Mr. Barber, I was continually led to believe ˙ * * * that I would continue to have my service station lease renewed indefinitely." Such vague allegations, without more, are insufficient to support a claim of fraudulent misrepresentation which induced plaintiffs to enter into the leases. In the first place, "[f]raud must be proven by clear and satisfactory evidence, which requires a higher degree of proof than in ordinary civil cases." *Kamuchey v. Trzesniewski*, supra, at 98, 98 N.W.2d at 405. Secondly, to support a claim of actual misrepresentation as well as of fraudulent concealment, plaintiffs must show that they had a right to rely on the misrepresentations. *Alropa Corp. v. Flatley*, supra. While the issue of reasonable reliance is ordinarily a question for the jury to determine, see *Anderson v. Tri-State Home Improvement Co.*, 268 Wis. 455, 67 N.W.2d 853 (1955), the Court is of the opinion that, in this case, in view of the vague character of the allegations of misrepresentation made and the clear and contradictory language of the leases thereafter entered into by the plaintiffs, as a matter of law plaintiffs had no right to rely on the representations made to them.

As stated in *Kirk v. Home Indemnity Company*, 431 F.2d 554, 559 (7th Cir. 1970):

" * * * [T]he granting of summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances. It is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial. [Citation omitted.] If the pleadings, and proof in the form of depositions,

634

affidavits and admissions on file, disclose that no real cause of action or defense exists, the court may determine there is no issue to be tried and may grant a summary judgment. The court has the power to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried. [Citation omitted.]"

Having looked at the pleadings, affidavits, and depositions submitted, as well as the briefs on this motion, and accepting the plaintiffs' view of the facts in this action for purposes of this motion, the Court is of the opinion that no genuine issue on the claim of fraudulent misrepresentation exists for trial.

IT IS THEREFORE ORDERED that the motion of the defendant Cities Service Oil Company for summary judgment be and it hereby is granted.

IT IS FURTHER ORDERED that pursuant to the stipulation entered into between the parties on June 1, 1976, the clerk of court is to enter judgment for the defendant in the amount of $984 on its counterclaim against the plaintiff Gerald Guyer, and in the amount of $2,200 on its counterclaim against the defendant Lauren Karnes.