Stuart DURKEE and Mark Becker, individually and as partners d/b/a Cedar Car Care, Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER COMPANY, an Ohio corporation, and Mathisen Tire, Defendants.

No. 87–C–5–S.

United States District Court, W.D. Wisconsin.

May 22, 1987.

Edward R. Brunner, Brunner & Sykes, Rice Lake, Wis., for plaintiffs.

William M. Conley, Foley & Lardner, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is the motion of defendant Goodyear Tire & Rubber for summary judgment on each count of the plaintiffs' three count complaint arising from the contractual relationship between the parties. By order dated February 16, 1987, the Court determined that the complaint stated no claim for relief (nor was there any possible claim that could be made) against defendant Mathisen Tire. Accordingly, the case had been properly removed to this Court from the Circuit Court of Barron County. The plaintiffs were of diverse citizenship from the only proper defendant, and the amount in controversy exceeded $10,000. The jurisdiction of this Court has been properly invoked.

### FACTS

Plaintiffs Stuart Durkee and Mark Becker are Wisconsin residents engaged in the sale of automobile and truck tires and doing business as Cedar Car Care. The Goodyear Tire and Rubber Company is an Ohio corporation and manufactures and markets automobile and truck tires.

On October 3, 1984, Durkee and Blake Marsh, Becker's predecessor in the Cedar Car Care partnership, entered into a dealer contract with Goodyear, establishing Cedar Car Care as a dealer in Goodyear products. The contract, in pertinent part, stated as follows:

1. Goodyear hereby appoints Dealer a non-exclusive Contract Dealer in such Goodyear products and merchandise indicated in Paragraph 2 hereof, hereinafter collectively referred to as "Products," as shall be made available by Goodyear from time to time to its Contract Dealers generally. Goodyear agrees to sell Products to Dealer for resale except that Goodyear shall not be required to sell to Dealer a Product or Products the sale of which to Contract Dealers generally has been discontinued by Goodyear. Goodyear retains the right to sell to other customers in Dealer's trade area and elsewhere.

\*    \*    \*    \*    \*    \*

14. ... This Contract shall supersede any other Dealer Agreement and/or any other sales agreement now in effect between the parties concerning the sale by Goodyear to Dealer of any Product covered hereby. This Contract expresses completely the obligations and promises of both parties and no other obligations or promises by either party are to be inferred by reference to any other oral or written statements by the parties or their representatives.

Goodyear's representative in the formation of the relationship between the parties was Phil Heimbach. For purposes of this motion only, it is assumed that Heimbach represented to Durkee that Cedar Car Care's dealership in the Rice Lake, Wisconsin area would be exclusive for a period of five years; that Cedar Car Care would be given the first opportunity to open additional dealerships in the area and would be consulted before Goodyear contracted with any other dealers. Against plaintiffs' wishes, Goodyear entered into a dealership contract with Mathisen Tire in Rice Lake, Wisconsin, in November 1986.

### MEMORANDUM

It is plaintiffs' claim that Heimbach's promise of exclusivity in the dealership arrangement between Cedar Car Care and Goodyear was breached when Goodyear entered into a contract with Mathisen (Count I); that Goodyear fraudulently induced the plaintiffs to enter into the contract by virtue of Heimbach's promise (Count II); and that, under a theory of promissory estoppel, Heimbach's promise of exclusivity should be enforced (Count III).

Goodyear bases its motion for summary judgment on the proposition that, even if Heimbach promised the plaintiffs an exclusive arrangement, the contract language expressly contradicts such a promise and the parol evidence rule denies their claims.

It is, of course, obvious that plaintiffs cannot establish liability if the evidence of Heimbach's promise is excluded by the parol evidence rule. Plaintiffs were granted a "non-exclusive" dealership in Goodyear products. The parol evidence rule, which is a rule of substantive law and not a rule of evidence, *In Re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 288 N.W.2d 852, 855 (1980), is as follows:

When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Id.* Leaving aside questions of fraud, duress or mutual mistake for a moment, it is well settled that parol evidence is admissible on the question of "whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement." *Federal Deposit Insurance Corp. v. First Mortgage Investors*, 76 Wis.2d 151, 250 N.W.2d 362, 366 (1977).

Plaintiffs' reliance on this latter principle to defeat the defendant's motion is unwarranted. At least three corollary principles apply in this situation. First, the rule relied upon by plaintiffs is "subject to the limitation that such parol evidence does not conflict with the part [of an assertedly partial integration] that has been integrated in writing. *Id.* 250 N.W.2d at 366, citing *Morn v. Schalk*, 14 Wis.2d 307, 111 N.W.2d 80, 84 (1961) The issue to which plaintiffs wish to offer parol evidence—the question of exclusivity—is one which is directly addressed by the written contract. Second, evidence of prior agreements which relate to the same subject matter as the agreement in question, "is not admissible when the written agreement embodies written terms excluding additional understandings or agreements not contained in the writing, i.e., 'merger' clauses." *Spring Valley*, 288 N.W.2d at 855. The contract in question here contains a clear and comprehensive merger clause at paragraph 14, "which expressly negatives collateral or antecedent understandings. *Id.*, at 855–56. Third, it

has been repeatedly held, as Justice Robert Hansen pointed out in *Production Credit Association of Green Bay v. Rosner*, 78 Wis.2d 543, 255 N.W.2d 79, 81 (1977), that oral testimony is admissible only when it "clarif[ies] an existing ambiguity and [it] cannot establish an understanding in variance with the terms of the written document." There is simply nothing ambiguous about the language appointing the plaintiffs as a "non-exclusive" dealer, and plaintiffs do not contend otherwise.

These same principles undercut plaintiffs' promissory estoppel theory. This doctrine, which was adopted in *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965), provides that a promise may be specifically enforced, or subject the promisor to damages. (*Id.* 133 N.W.2d at 275, n. 2):

(1) when that promise is one which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee, (2) when the promise does induce such action or forebearance, and (3) when injustice can be avoided only by enforcement of the promise.

*Kinn v. Coast Catamaran Corp.*, 582 F.Supp. 682, 687 (E.D.Wis.1984). While the first two considerations arguably present factual issues in this case, the third requirement is one which involves a policy decision, embracing an element of discretion, for the Court alone. *Hoffman*, 133 N.W.2d at 275. Both Judge Reynolds in *Kinn*, and Judge Warren in *Wojciechowski v. Amoco Oil Co.*, 483 F.Supp. 109 (E.D. Wis.1980), held that the principles underlying the parol evidence rule required the exercise of such discretion against plaintiffs in cases virtually on point with this one.

This Court agrees with their conclusions. In *Hoffman*, the plaintiff had made substantial expenditures with the understanding that, if he did so, the defendant would grant him a franchise. The doctrine of promissory estoppel was adopted because the requisites of a contract between the parties did not exist. After all, there would be no need for the doctrine if an

action for breach or specific performance of a contract could be brought. The rationale for the doctrine simply disappears when the parties finally enter into a contract. If the doctrine can be applied as an alternative to a breach of contract action which is barred by the parol evidence rule, then the parol evidence rule would be nugatory. The rule's justification or purpose is that:

> [W]hen the parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnishes better and more definite evidence of what was undertaken by each party than the memory of man, and applies to exclude extrinsic utterances when it is sought to use those utterances for the purpose for which the writing was made, such writing superseding them as the legal act.... No other language is admissible to show what the parties meant or intended, for the reason that each has made the instrument the agreed test of his meaning and intention.

30 Am.Jur.2d *Evidence,* § 1016, pp. 151–52 (1967) (footnotes omitted). Thus, the purpose of the rule is to bind the parties to the agreement that they executed in writing. To entertain a theory of recovery that makes a prior, inconsistent promise enforceable is to write the rule out of existence. Plaintiffs' attempt to fit their case into the *Hoffman* mold by asserting that they made expenditures related to the premises in which they did business before the contract was signed and after they were led to believe that they would have an exclusive dealership. However, this assertion is factually flimsy as plaintiff Durkee already had made a down payment on the property before there were any discussions concerning the opening of a tire dealership. Deposition of Stuart Durkee, pp. 71–73. As defendant points out, the numerous contingencies present before the actual signing of the contract suggest that any reliance on the part of plaintiffs was not justified. The plaintiff in *Hoffman* acted in reliance on representations that he had to make the expenditures in order to qualify for the franchise. Plaintiffs expended funds in anticipation of receiving an exclusive dealership, if their assertions are correct, but they were not told that their receipt of the dealership was dependent upon making the expenditures. The Court considers this a crucial distinction. The equitable considerations present in *Hoffman* are simply not compelling in this situation.

Nor is plaintiffs' argument that the promise was made both before *and at the time* of the execution of the dealership agreement availing. Although parol evidence to prove subsequent modifications of an agreement is admissible, 30 Am.Jur.2d *Evidence,* § 1063, p. 203 (1967), parol evidence of "prior *or contemporaneous* conversions or declarations" is incompetent. 30 Am.Jur.2d Evidence, § 1016, p. 149 (1967). *See also* Wis. Stat. § 402.202 (Uniform Commercial Code, § 2–202).

The Court must now turn to the questions of fraud, duress and mutual mistake which were previously set aside. Plaintiffs do not allege duress or mutual mistake. They do, however, allege that they were fraudulently induced to enter into the contract by virtue of Heimbach's promises.

In *Kinn,* supra, Judge Reynolds found such a claim without merit under very similar circumstances. 582 F.Supp. at 687. It is clear that fraud cannot be based upon representations of things to be done in the future. *Id.* Parol evidence is admissible to show fraud, since it is not being used to contradict the terms of an agreement, but rather to demonstrate the invalidity of the agreement. *State v. Conway,* 26 Wis.2d 410, 132 N.W.2d 539 (1965). The application of the parol evidence rule to allegations of fraud was succinctly stated in *Guyer v. Cities Service Oil Co.,* 440 F.Supp. 630 (E.D.Wis.1977):

> [P]arol evidence may be admissible in support of a claim of fraudulent inducement to enter into a contract, as in such a case there is no attempt made to vary the terms of the contract itself. Such inducements must, however, constitute promises made with a present intention not to perform, and must also be promises "upon which the purchaser has

a right to rely." Statements made which are merely unfulfilled promises or statements of future events cannot form the basis for a claim of actionable fraud. *Id.* at 632 (citations omitted). The decision in *Guyer* makes clear that the exact nature of the representations, not the promisee's understanding of them, is crucial. He must show that he had a right to rely on the defendant's statements, not merely that he did so. *Id.* at 633.

█ The parties to the negotiations for the plaintiffs, Durkee and Blake Marsh, both assert that Heimbach told them that only the local Chrysler dealer who already sold Goodyear tires would be permitted to sell such products while Cedar Car Care was in business. These representations were made from early in the negotiations through the presentation of the contract for the signatures of Durkee and Marsh. When Durkee and Marsh questioned the "non-exclusive" language in the contract, Heimbach again assured them that, "in spite of the language in the contract, that we would indeed be the only Goodyear tire dealership in Rice Lake as long as we remained in business." Affidavit of Blake Marsh.

The Court concludes that, as a matter of law, plaintiffs did not have a right to rely on such representations. The contract was not to be executed by Heimbach, but rather called for the signature of the District Manager for Goodyear. While it was reasonable for the plaintiffs to believe that Heimbach could bind Goodyear in general, it was not reasonable to assume that his assurances were binding in the face of contractual language directly contrary to his representations and where a contract term expressly barred reliance on any additional promises:

This contract expresses completely the obligations and promises of both parties and no other obligations or promises by either party are to be inferred by reference to any other oral or written statements by the parties or their representatives.

Paragraph 14 of the contract.

█ There is also the matter of how to characterize Heimbach's representations.

Fraud cannot be predicated on unfulfilled promises or on representations about things to be done in the future. *Suskey v. Davidoff,* 2 Wis.2d 503, 87 N.W.2d 306 (1958); *Federal Deposit Insurance Co. v. Lauterbach,* 626 F.2d 1327 (7th Cir.1980). Heimbach's statements appear to be most reasonably characterized, even under plaintiffs' reports of his statements, as a promise that, despite the contractual language, Goodyear did not generally establish competing dealerships in a given area. This promise was, in this case, unfulfilled. But the statements were not fraudulent. At least it does not appear possible that they could be shown to be fraudulent under the higher degree of proof applicable in fraud cases in Wisconsin. *Lundin v. Shimanski,* 124 Wis.2d 175, 368 N.W.2d 676 (1985) (Fraud must be proved by clear and convincing evidence).

Plaintiffs must prove that the representations were made with a present intention not to perform. *Guyer,* supra. Defendants produced evidence, from plaintiffs in fact, that Heimbach was as surprised as they were that Mathisen Tire was given a dealership. They have also submitted evidence that there was no intention on the part of Goodyear in 1984, when the relationship was finalized, to later establish another dealership. Plaintiffs counter this argument by arguing that this evidence does not prove that Goodyear intended to carry out Heimbach's promise, but only that it did not then plan to violate it. As plaintiffs state:

If Goodyear had the present intent in October of 1984 to treat the territory as nonexclusive at any time during the future term of the contract, there was a present intent not to perform. Thus, if the possibility of another outlet in Rice Lake arose and if Goodyear in October of 1984 knew that it would not treat Cedar Car Care as an exclusive dealer under those circumstances, then a present intent not to perform would be shown.

Plaintiffs' brief, page 19. Plaintiffs' argument misses the mark, although not by much. There is simply no "present inten-

**194**

tion not to perform" a promise unless, at the time the promise was made there was an intent to violate it. It is the intentional concealment of one's present plans that makes the act fraudulent and distinguishes the act from breach of contract. It is a breach of contract, and not fraud, to break a promise because of changed conditions or circumstances even if the promisor knew that he would not carry out his promise upon the occurrence of the changed circumstances:

> If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect. If the recipient wishes to have legal assurance that the intention honestly entertained will be carried out, he must see that it is expressed in the form of an enforceable contract, and his action must be on the contract.

> \* \* \* \* \* \*

> The intention of the promisor not to perform ... cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.

3 *Restatement 2d Torts*, § 530 (1977), Comments b. and d. Simply stated, plaintiffs have only shown that the defendant Goodyear did nothing more than change a prior practice which allowed dealers to operate without competition. They did not provide evidence that Goodyear had a present intent not to perform. The evidence that Heimbach refused to change the written contract does not prove an intent not to perform, it demonstrates instead plaintiffs' complete lack of justification for reliance on Heimbach's promise.

Accordingly,

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED. Judgment shall be entered for defendant, dismissing plaintiffs' complaint with prejudice and costs.